UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

DOMINICA R. ZELLER, ELANA P. CARROLL,
SHARI MERRILL, , TAMMY MEUNIER, SHEILA F.
MURPHY, SHERI BROOKING-VAN LONE, AMY
CROSS, AMY STOWE, JANE PIETKIVITCH, and
RUBY OWENS on behalf of themselves and all others
similarly situated,

                       Plaintiff,

            -against-

PDC CORPORATION**,** d/b/a PDC OF NEW YORK,
PARAMEDS.COM, INC., d/b/a PDC RETRIEVALS,
and ELI ROWE,

                 Defendants.

_____X

Civil Action No. 13-cv-
05035(ARR)(JO)

**AMENDED CLASS
ACTION COMPLAINT**

**Jury Trial Demanded**

        By their attorneys Maurice Pianko of Pianko Law Group PLLC, and Jesse Strauss

of Strauss Law PLLC, Plaintiffs Dominica R. Zeller, Elana P. Carroll, Shari Merrill, ,

Tammy Meunier, Sheila F. Murphy, Sheri Brooking-Van Lone, Amy Cross, Amy Stowe,

Jane Pietkivitch, and Ruby Owens, individually and as a representative of classes and a

collective of all others similarly situated, respectfully sets forth and alleges as follows:

**PRELIMINARY STATEMENT AND SUMMARY OF CLAIMS**

        1.       Defendants PDC Corporation**,** d/b/a PDC of New York, Parameds.com,

Inc., d/b/a PDC Retrievals (herein referred as PDC), is an Attending Physician

Statements ("APS Statements") retrieval and summary company. APS Statements are

used by insurance companies to determine claims and evaluate whether a potential

insured meets underwriting standards. PDC employs a nationwide network of "Medical

Records Retriever" to obtain APS Statements as requested by insurance company clients.

PDC claims its clients are the majority of the Top 50 life, disability, Long-Term Care and Health Insurance companies in North America.

2.     Defendants employed Plaintiffs as Medical Records Retrievers. Plaintiffs were paid solely on a fee basis for their work and Plaintiffs were not compensated at the minimum wage and not provided overtime pay as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, , California Labor Law, Cal. Lab. Code §§ 500 *et seq.* and 1171 *et seq.*, as well as the supporting regulations of the California Industrial Welfare Commission, Wage Order 4-2001, codified at 8 Cal. Code Regs. §11040 *et seq.*, and the California Bus. & Prof. Code §17200 et seq., (collectively "CLL"), the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §4111.01 *et seq.*, as well as the Ohio Constitution, Ohio Const. art II, § 34 (collectively "OMFWSA"), the Maine Minimum Wages Statute, Me. Rev. Stat. tit. 26 §661-672 ("MMWS"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1 *et seq.*, as well as the supporting regulations of the Illinois General Assembly codified at Ill. Admin Code tit. 56 §§ 210.100 *et seq.* (collectively "IMWL"), the Connecticut Minimum Wage Act, Conn. Gen. Stat. §31-58 *et seq.* ("CMWA"), and the Wisconsin Minimum Wage Law, Wis. Stat. Ann. § 104.001 *et seq.*, as well as the supporting regulations of Wisconsin Department of Workforce Development codified at Wis. Admin. Code DWD §§ 272 *et seq.* and 274 *et seq.* (collectively "WIMWL").

3.     Plaintiffs bring this action to obtain for themselves and similarly situated employees who elect to opt-into this action pursuant to the FLSA §§ 201 *et seq.* and, specifically, the collective action provision of 29 U.S.C. §§ 216(b), to obtain the wages they and other employees were unlawfully denied, including minimum wage, and

overtime compensation, plus interest, liquidated damages, as well as attorneys' fees and costs.

4.     Plaintiff Zeller also brings individual and representative wage claims under the CLL for similarly situated employees in California as a class action pursuant to Federal Rule of Civil Procedure 23.

5.     Plaintiff Merrill and Plaintiff Owens also bring individual and representative wage claims under the OMFWSA for similarly situated employees in Ohio as a class action pursuant to Federal Rule of Civil Procedure 23.

6.     Plaintiff Meunier also brings individual and representative wage claims under the MMWS for similarly situated employees in Maine as a class action pursuant to Federal Rule of Civil Procedure 23.

7.     Plaintiff Murphy also brings individual and representative wage claims under the IMWL for similarly situated employees in Illinois as a class action pursuant to Federal Rule of Civil Procedure 23.

8.     Plaintiff Brooking-Van Lone also brings individual and representative wage claims under the CMWA for similarly situated employees in Connecticut as a class action pursuant to Federal Rule of Civil Procedure 23.Plaintiff Pietkivitch also brings individual and representative wage claims under the WIMWL for similarly situated employees in Wisconsin as a class action pursuant to Federal Rule of Civil Procedure 23.

## JURISDICTION AND VENUE

9.     Subject matter jurisdiction is proper in this Court for FLSA claims pursuant to 28 U.S.C. §§1331 and FLSA.  Subject matter jurisdiction is proper in this Court for CLL, WAMWA, OMFWSA, MMWS, IMWL, CMWA, and WIMWL  claims

pursuant to 28 U.S.C. § 1367. Plaintiff's CLL, WAMWA, OMFWSA, MMWS, IMWL, CMWA, and WIMWL claims are so closely related to Plaintiff's FLSA claims that the form part of the same case and controversy.

10. Defendants maintain their "Corporate Headquarters" in Kew Gardens, New York. Defendant Eli Rowe is a resident of the State of New York.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this district.

**PARTIES**

12. Plaintiff Dominica R. Zeller is an individual residing in the state of California. Ms. Zeller worked for PDC as a Medical Records Retriever in the state of California from December 20, 2007 to April 8, 2013. Ms. Zeller, like all Medical Records Retrievers in the state of California, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA and CLL. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Zeller's employment and compensation at PDC. Ms. Zeller's regular workweek would commence at 7 a.m and end at between 4 p.m. and 7 p.m., 5 days per week, for a total of approximately between 32 and 60 hours per week for 260 weeks. To the best of her recollection, Ms. Zeller regularly earned $95 per week. PDC is aware of the hours worked by Ms. Zeller because of PDC's requirement that Ms. Zeller sign in and out of work. Her pay per hour never equaled the California nor Federal minimum wage and overtime wages. In addition to working as a Medical Records Retriever, Ms. Zeller also worked as a Subbing Retriever at times, and is not suing for wages owed as a Subbing Retriever under California or Federal Law, nor seeking to represent a class or collective of Subbing Retrievers.

13.     Plaintiff Elana P. Carroll is an individual residing in the state of North Carolina.  Ms. Carroll worked for PDC as a Medical Records Retriever in the state of North Carolina from July 2009 to December 2012.  Ms. Carroll, like all Medical Records Retrievers in the state of North Carolina, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA.. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Carroll's employment and compensation at PDC.  Ms. Carroll's regular workweek would commence at 8 a.m. and end at between 5 p.m. and 8 p.m. depending upon the time zone she was trying to reach, 5 days per week, for a total of between approximately 45 hours and 70 hours per week for 160 weeks.  To the best of her recollection, Ms. Carroll regularly earned between $200 and $275 per week.  PDC is aware of the hours worked by Ms. Carroll because of PDC's requirement that Ms. Carroll sign in and out of work. Her pay per hour never equaled the Federal minimum wage and overtime wages.  In addition to working as a Medical Records Retriever, Ms. Carroll also performed data entry, worked as a Subbing Retriever, and mentored new employees at times.  Ms. Zeller is not suing for wages owed for data entry, working as a Subbing Retriever, and mentoring under Federal Law, nor seeking to represent a class or collective of data entry employees, Subbing Retrievers, or mentors.

14.     Shari Merrill is an individual residing in the state of Ohio.  Ms. Merrill worked for PDC as a Medical Records Retriever in the state of Ohio from April 2011 to July 3, 2013.  Ms. Merrill, like all Medical Records Retrievers in the state of Ohio, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA and OMFWSA. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Merrill's employment and compensation at PDC.  Ms. Merrill's regular

workweek would commence at 8 a.m and end at between 6 p.m. and 9:30 p.m., depending upon the time zone she was trying to reach, 5 days per week, without a lunch break for a total of between 60 hours and 70 hours per week for 115 weeks. During her first year or employment, Ms. Merrill worked approximately 50 hours per week. To the best of her recollection, Ms. Merrill regularly earned about $225 per week. PDC is aware of the hours worked by Ms. Merrill because of PDC's requirement that Ms. Merrill sign in and out of work. Her pay per hour never equaled the Ohio nor Federal minimum wage and overtime wages.

15. Tammy Meunier is an individual residing in the state of Maine. Ms. Meunier worked for PDC as a Medical Records Retriever in the state of Maine from September 1, 2007 to December 24, 2011. Ms. Meunier, like all Medical Records Retrievers in the state of Maine, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA and MMWS. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Meunier's employment and compensation at PDC. Ms. Meunier's regular workweek would commence at 9 a.m. and end at 7 p.m. 5 days per week, for a total of 45 hours per week for 220 weeks. To the best of her recollection, Ms. Meunier regularly earned between $150 and $175 per week. PDC is aware of the hours worked by Ms. Meunier because of PDC's requirement that Ms. Meunier sign in and out of work. Her pay per hour never equaled the Maine nor Federal minimum wage and overtime wages. While employed by PDC, Ms. Meunier was known as "Tammy Raymond."

16. Sheila F. Murphy is an individual residing in the state of Illinois. Ms. Murphy worked for PDC as a Medical Records Retriever in the state of Illinois from

October 12, 2009 to January 30, 2013. Ms. Murphy, like all Medical Records Retrievers in the state of Illinois, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA and IMWL. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Murphy's employment and compensation at PDC. Ms. Murphy's regular workweek would commence at 6:45 a.m and end at between 5 p.m. and 6 p.m., depending upon the time zone she was trying to reach, 5 days per week, for a total of between 40 hours and 60 hours per week for 173 weeks. To the best of her recollection, Ms. Murphy regularly earned about $230 per week. PDC is aware of the hours worked by Ms. Murphy because of PDC's requirement that Ms. Murphy sign in and out of work. Her pay per hour never equaled the Illinois nor Federal minimum wage and overtime wages. In addition to working as a Medical Records Retriever, Ms. Murphy also worked as a Subbing Retriever, and mentored new employees at times. Ms. Murphy is not suing for wages owed for data entry, working as a Subbing Retriever, and mentoring under Federal Law, nor seeking to represent a class or collective of data entry employees, Subbing Retrievers, or mentors.

17.     Plaintiff Sherri Brooking-Van Lone is an individual residing in the state of California. Ms. Brooking-Van Lone worked for PDC as a Medical Records Retrievers in the state of Connecticut from August 2007 to October 2010. Ms. Brooking-Van Lone, like all Medical Records Retrievers in the state of Connecticut, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA and CMWA. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Brooking-Van Lone's employment and compensation at PDC. Ms. Brooking-Van Lone's regular workweek would commence at 7 a.m. and end at between 7 p.m. and 8 p.m., 5 days per

week, for a total of between 40 and 70 hours per week for approximately 160 weeks. To the best of her recollection, Ms. Brooking-Van Lone regularly earned between $75 and $125 per week. PDC is aware of the hours worked by Ms. Brooking-Van Lone because of PDC's requirement that Ms. Brooking-Van Lone sign in and out of work. Her pay per hour never equaled the Connecticut or Federal minimum wage and overtime wages. In addition to working as a Medical Records Retriever, Ms. Brooking-Van Lone also worked as a Subbing Retriever at times, and is not suing for wages owed as a Subbing Retriever under Connettetuct or Federal Law, nor seeking to represent a class or collective of Subbing Retrievers. During her employment at PDC, Ms. Brooking-Van Lone was known as "Sherri Garner."

18.     Plaintiff Amy Cross is an individual residing in the state of Texas. Ms. Cross worked for PDC as a Medical Records Retriever in the state of Texas from July 2009 to February 2011. Ms. Cross, like all Medical Records Retrievers in the state of Texas, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Cross's employment and compensation at PDC. Ms. Cross's regular workweek would commence at 9 a.m. and end at between 6 p.m. and 7 p.m., 5 days per week, for a total of approximately 50.5 hours per week for 78 weeks. To the best of her recollection, Ms. Cross regularly earned $105 per week. PDC is aware of the hours worked by Ms. Cross because of PDC's requirement that Ms. Cross sign in and out of work. Her pay per hour never equaled the Federal minimum wage and overtime wages.

19.     Plaintiff Amy Stowe is an individual residing in the state of South Carolina. Ms. Stowe worked for PDC as a Medical Records Retriever in the state of

South Carolina from October 2006 to April 2013. Ms. Stowe, like all Medical Records Retrievers in the state of South Carolina, worked as an employee of PDC but was denied minimum wage and overtime as required by FLSA. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Stowe's employment and compensation at PDC. Ms. Stowe's regular workweek would commence at 7:30 a.m. and end at between 6:30 p.m. and 7 p.m., 5 days per week, for a total of between 55 hours and 60 hours per week for 312 weeks. To the best of her recollection, Ms. Stowe regularly earned between $100 and $125 per week. PDC is aware of the hours worked by Ms. Stowe because of PDC's requirement that Ms. Stowe sign in and out of work. Her pay per hour never equaled the Federal minimum wage and overtime wages.

20. Plaintiff Jane Pietkivitch is an individual residing in the state of Wisconsin. Ms. Pietkivitch worked for PDC as a Medical Records Retriever in the state of South Carolina from March 25, 2008 through November 2012 and in the state of Wisconsin from December 2012 to May 10, 2013. Ms. Pietkivitch, like all Medical Records Retrievers in the states of South Carolina and Wisconsin, worked as an employee of PDC but was denied minimum wage as required by FLSA and WIMWL. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Pietkivitch's employment and compensation at PDC. Ms. Pietkivitch's regular workweek would commence between 9 a.m. and 11 a.m. and end between 4 p.m. and 6 p.m., 5 days per week, for a total of approximately 20 hours to 30 hours per week for 78 weeks. To the best of her recollection, Ms. Pietkivitch regularly earned $50 per week. PDC is aware of the hours worked by Ms. Pietkivitch because of PDC's requirement that Ms. Pietkivitch sign in and out of work. Her pay per hour never equaled the Federal minimum wage. In addition to

working as a Medical Records Retriever, Ms. Pietkivitch also worked to obtain information needed for special releases at times, and is not suing for wages owed for this work under Wisconsin or Federal Law, nor seeking to represent a class or collective of such workers.

21.     Ruby Owens is an individual residing in the state of Ohio.  Ms. Owens worked for PDC as a Medical Records Retriever in the state of Ohio from December 10, 2012 to July 3, 2013.  Ms. Owens, like all Medical Records Retrievers in the state of Ohio, worked as an employee of PDC but was denied minimum wage as required by FLSA and OMFWSA. The allegations in Paragraphs 84 to 103 of this complaint describe Ms. Owens's employment and compensation at PDC.  Ms. Owens's regular workweek would commence between 9 a.m. and 10 a.m. and end between 4:30 p.m. and 7 p.m., 5 days per week, for a total of between 34 hours and 40 hours per week for 29 weeks.  To the best of her recollection, Ms. Owens regularly earned between $125 per week and $150 per week.  PDC is aware of the hours worked by Ms. Owens because of PDC's requirement that Ms. Owens sign in and out of work.  Her pay per hour never equaled the Federal minimum wage.

22.     All Plaintiffs have or will consent to join this action by filing a "Consent to Join" form indicating consent.

23.     PDC Corporation, d/b/a PDC of New York is a Delaware Corporation with its headquarters at 120-10 Queens Boulevard, Kew Gardens, New York 11415.

24.     Parameds.com, Inc., d/b/a. PDC Retrievals is a Delaware Corporation with its headquarters at 120-10 Queens Boulevard, Kew Gardens, New York.

25.     Eli Rowe is the Chief Executive Officer of Parameds.com, Inc. and PDC Corporation.  Upon information and belief, Mr. Rowe resides at 114 Mowbray Drive, Kew Gardens, New York 11415.

26.     Parameds.com, Inc, PDC Corporation and Mr. Rowe are covered employers under FLSA , CLL, OMFWSA, MMWS, IMWL, CMWA and WIMWL and at all times employed Plaintiffs and similarly situated employees.

27.     Upon information and belief, Eli Rowe, as the owner of PDC, had power over personnel decisions and payroll decisions, and the power to set work schedules and maintain employment records at PDC.  Eli Rowe was Plaintiffs' and similarly situated employees' employer within the meaning of FLSA, , CLL, OMFWSA, MMWS, IMWL, CMWA and WIMWL.   Mr. Rowe corresponded with Plaintiffs and others similarly situated regarding PDC policies, including a prohibition on speaking with other Medical Records Retrievers.

28.     Upon information and belief, Defendants PDC Corporation**,** d/b/a PDC of New York, Parameds.com, Inc., d/b/a PDC Retrievals and Eli Rowe are alter egos of each other, and had a unity of interest and ownership such that their continued treatment as separate entities would not be just.  Upon information and belief, the relationship of Defendants PDC Corporation**,** d/b/a PDC of New York, Parameds.com, Inc., d/b/a PDC Retrievals and Eli Rowe is such that the actions of each Defendant should be imputed to each other.

29.     Defendants engage in interstate commerce, with an annual gross volume of sales in excess of $500,000.

30.

# CALIFORNIA CLASS ACTION ALLEGATIONS (RULE 23)

31.     Plaintiff Zeller brings the Sixth, Seventh and Eighth causes of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and the following classes: All Medical Records Retrievers who were employed by Defendants between September 9, 2009 and the date of final judgment in this matter ("the California Class"). Excluded from the California Class are Defendants, Defendant's legal representatives, officers, directors, assigns and successors, the Court and Court personnel (including the judge presiding over this matter and their family members) and all persons who will submit appropriate requests for exclusion from the California Class.

32.     The members of the California Class are so numerous that joinder is impracticable, with the size of the Class at 40 or more individuals.

33.     Defendants have acted or have refused to act on grounds generally applicable to the California Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the California Class as a whole.

34.     Common questions of law and fact exist with respect to the California Class and predominate over any questions unique to or effecting only selective members. Those questions include but are not limited to: (a) whether Plaintiff Zeller and the California Class were employees within the meaning of the CLL; (b) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class minimum wage for all hours worked in violation of the CLL; (c) whether Defendants had a policy or practice of failing to pay Plaintiff Zeller and the California Class overtime wages in violation of the CLL; (d) the nature and extent of class-wide injury and the measure of damages for those

injuries; (e) whether Defendants' policy or practice of underpaying Plaintiff Zeller and the class was instituted willfully or with reckless disregard for the law.

35.    The claims of Plaintiff Zeller are typical of the claims of the California Class because Plaintiff was subject to the same or extremely similar compensation policies and practices and has, along with the California Class, sustained similar types of damages as a result of Defendants failure to comply with the CLL.

36.    Plaintiff Zeller will fairly and adequately represent and protect the interests of the California Class.    Plaintiff has retained competent and experienced counsel who has brought and litigated numerous class actions.    There is no conflict between Plaintiff Zeller and the other members of the California Class.

37.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.    The members of the California Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform polices, practices, and procedures, which were in violation of the CLL.    The damages to be recouped by each member of the class, statutorily, are small compared to the expense and burden of prosecuting this litigation only on an individual basis.    In the absence of Class-wide adjudication, many members of the class may otherwise forego their rights as a result of the lesser amount in controversy on an individual basis, especially because prosecuting such a case may be burdensome.    Class litigation is also superior because it will prevent duplicative litigation that would tax both the litigants and the courts.    Such litigation would also risk inconstant judgments about Defendants' practices.

38.    This action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).

## OHIO CLASS ACTION ALLEGATIONS (RULE 23)

39. Plaintiff Merrill and Plaintiff Owens bring the Ninth and Tenth causes of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following classes: All Medical Records Retrievers who were employed by Defendants between September 9, 2010 and the date of final judgment in this matter ("the Ohio Class"). Excluded from the Ohio Class are Defendants, Defendant's legal representatives, officers, directors, assigns and successors, the Court and Court personnel (including the judge presiding over this matter and their family members) and all persons who will submit appropriate requests for exclusion from the Ohio Class.

40. The members of the Ohio Class are so numerous that joinder is impracticable, with the size of the Class at 40 or more individuals.

41. Defendants have acted or have refused to act on grounds generally applicable to the Ohio Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Ohio Class as a whole.

42. Common questions of law and fact exist with respect to the Ohio Class and predominate over any questions unique to or effecting only selective members. Those questions include but are not limited to: (a) whether Plaintiff Merrill and the Ohio Class were employees within the meaning of the OMFWSA; (b) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class minimum wage for all hours worked in violation of the OMFWSA; (c) whether Defendants had a policy or practice of failing to pay Plaintiff Merrill and the Ohio Class overtime wages in violation of the OMFWSA; (d) the nature and extent of class-wide injury and the measure of damages for

those injuries; (e) whether Defendants' policy or practice of underpaying Plaintiff Merrill and the class was instituted willfully or with reckless disregard for the law.

43. The claims of Plaintiff Merrill are typical of the claims of the Ohio Class because Plaintiff was subject to the same or extremely similar compensation policies and practices and has, along with the Ohio Class, sustained similar types of damages as a result of Defendants failure to comply with the OMFWSA.

44. Plaintiff Merrill will fairly and adequately represent and protect the interests of the Ohio Class. Plaintiff has retained competent and experienced counsel who has brought and litigated numerous class actions. There is no conflict between Plaintiff Merrill and the other members of the Ohio Class.

45. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Ohio Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform polices practices, and procedures, which were in violation of the OMFWSA. The damages to be recouped by each member of the class, statutorily, are small compared to the expense and burden of prosecuting this litigation only on an individual basis. In the absence of Class-wide adjudication, many members of the class may otherwise forego their rights as a result of the lesser amount in controversy on an individual basis, especially because prosecuting such a case may be burdensome. Class litigation is also superior because it will prevent duplicative litigation that would tax both the litigants and the courts. Such litigation would also risk inconstant judgments about Defendants' practices.

46. This action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).

## MAINE CLASS ACTION ALLEGATIONS (RULE 23)

47. Plaintiff Meunier brings the Eleventh and Twelfth causes of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and the following classes: All Medical Records Retrievers who were employed by Defendants between September 9, 2007 and the date of final judgment in this matter ("the Maine Class"). Excluded from the Maine Class are Defendants, Defendant's legal representatives, officers, directors, assigns and successors, the Court and Court personnel (including the judge presiding over this matter and their family members) and all persons who will submit appropriate requests for exclusion from the Maine Class.

48. The members of the Maine Class are so numerous that joinder is impracticable, with the size of the Class at 40 or more individuals.

49. Defendants have acted or have refused to act on grounds generally applicable to the Maine Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Maine Class as a whole.

50. Common questions of law and fact exist with respect to the Maine Class and predominate over any questions unique to or effecting only selective members. Those questions include but are not limited to: (a) whether Plaintiff Meunier and the Maine Class were employees within the meaning of the MMWS; (b) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class minimum wage for all hours worked in violation of the MMWS; (c) whether Defendants had a policy or practice of failing to pay Plaintiff Meunier and the Maine Class overtime wages in violation of the

MMWS; (d) the nature and extent of class-wide injury and the measure of damages for those injuries; (e) whether Defendants' policy or practice of underpaying Plaintiff Meunier and the class was instituted willfully or with reckless disregard for the law.

51.     The claims of Plaintiff Meunier are typical of the claims of the Maine Class because Plaintiff was subject to the same or extremely similar compensation policies and practices and has, along with the Maine Class, sustained similar types of damages as a result of Defendants failure to comply with the MMWS.

52.     Plaintiff Meunier will fairly and adequately represent and protect the interests of the Maine Class.  Plaintiff has retained competent and experienced counsel who has brought and litigated numerous class actions.  There is no conflict between Plaintiff Meunier and the other members of the Maine Class.

53.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Maine Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform polices practices, and procedures, which were in violation of the MMWS.  The damages to be recouped by each member of the class, statutorily, are small compared to the expense and burden of prosecuting this litigation only on an individual basis.  In the absence of Class-wide adjudication, many members of the class may otherwise forego their rights as a result of the lesser amount in controversy on an individual basis, especially because prosecuting such a case may be burdensome.  Class litigation is also superior because it will prevent duplicative litigation that would tax both the litigants and the courts.  Such litigation would also risk inconstant judgments about Defendants' practices.

54.     This action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).

## ILLINOIS CLASS ACTION ALLEGATIONS (RULE 23)

55.     Plaintiff Murphy brings the Thirteenth and Fourteenth causes of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and the following classes: All Medical Records Retrievers who were employed by Defendants between September 9, 2010  and the date of final judgment in this matter ("the Illinois Class").     Excluded from the Illinois Class are Defendants, Defendant's legal representatives, officers, directors, assigns and successors, the Court and Court personnel (including the judge presiding over this matter and their family members) and all persons who will submit appropriate requests for exclusion from the Illinois Class.

56.     The members of the Illinois Class are so numerous that joinder is impracticable, with the size of the Class at 40 or more individuals.

57.     Defendants have acted or have refused to act on grounds generally applicable to the Illinois Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Illinois Class as a whole.

58.     Common questions of law and fact exist with respect to the Illinois Class and predominate over any questions unique to or effecting only selective members. Those questions include but are not limited to: (a) whether Plaintiff Murphy and the Illinois Class were employees within the meaning of the IMWL; (b) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class minimum wage for all hours worked in violation of the IMWL; (c) whether Defendants had a policy or practice of failing to pay Plaintiff Murphy and the Illinois Class overtime wages in violation of

the IMWL; (d) the nature and extent of class-wide injury and the measure of damages for those injuries; (e) whether Defendants' policy or practice of underpaying Plaintiff Murphy and the class was instituted willfully or with reckless disregard for the law.

59.     The claims of Plaintiff Murphy are typical of the claims of the Illinois Class because Plaintiff was subject to the same or extremely similar compensation policies and practices and has, along with the Illinois Class, sustained similar types of damages as a result of Defendants failure to comply with the IMWL.

60.     Plaintiff Murphy will fairly and adequately represent and protect the interests of the Illinois Class.  Plaintiff has retained competent and experienced counsel who has brought and litigated numerous class actions.  There is no conflict between Plaintiff Murphy and the other members of the Illinois Class.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Illinois Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform polices practices, and procedures, which were in violation of the IMWL.  The damages to be recouped by each member of the class, statutorily, are small compared to the expense and burden of prosecuting this litigation only on an individual basis.  In the absence of Class-wide adjudication, many members of the class may otherwise forego their rights as a result of the lesser amount in controversy on an individual basis, especially because prosecuting such a case may be burdensome.  Class litigation is also superior because it will prevent duplicative litigation that would tax both the litigants and the courts.  Such litigation would also risk inconstant judgments about Defendants' practices.

62. This action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).

## CONNECTICUT CLASS ACTION ALLEGATIONS (RULE 23)

63. Plaintiff Brooking-Van Lone brings the Fifteenth and Sixteenth causes of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and the following classes: All Medical Records Retrievers who were employed by Defendants prior to the date of final judgment in this matter as the statute of limitations has been equitably tolled by Defendants' failure to properly put Plaintiff on notice as to her rights as an employee and the fact that Plaintiff did not consult an attorney during her course of employment ("the Connecticut Class"). Excluded from the Connecticut Class are Defendants, Defendant's legal representatives, officers, directors, assigns and successors, the Court and Court personnel (including the judge presiding over this matter and their family members) and all persons who will submit appropriate requests for exclusion from the Connecticut Class.

64. The members of the Connecticut Class are so numerous that joinder is impracticable, with the size of the Class at 40 or more individuals.

65. Defendants have acted or have refused to act on grounds generally applicable to the Connecticut Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Connecticut Class as a whole.

66. Common questions of law and fact exist with respect to the Connecticut Class and predominate over any questions unique to or effecting only selective members. Those questions include but are not limited to: (a) whether Plaintiff Brooking-Van Lone

and the Connecticut Class were employees within the meaning of the CMWA; (b) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class minimum wage for all hours worked in violation of the CMWA; (c) whether Defendants had a policy or practice of failing to pay Plaintiff Brooking-Van Lone and the Connecticut Class overtime wages in violation of the CMWA; (d) the nature and extent of class-wide injury and the measure of damages for those injuries; (e) whether Defendants' policy or practice of underpaying Plaintiff Brooking-Van Lone and the class was instituted willfully or with reckless disregard for the law.

67. The claims of Plaintiff Brooking-Van Lone are typical of the claims of the Connecticut Class because Plaintiff was subject to the same or extremely similar compensation policies and practices and has, along with the Connecticut Class, sustained similar types of damages as a result of Defendants failure to comply with the CMWA.

68. Plaintiff Brooking-Van Lone will fairly and adequately represent and protect the interests of the Connecticut Class. Plaintiff has retained competent and experienced counsel who has brought and litigated numerous class actions. There is no conflict between Plaintiff Brooking-Van Lone and the other members of the Connecticut Class.

69. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Connecticut Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform polices practices, and procedures, which were in violation of the CMWA. The damages to be recouped by each member of the class, statutorily, are small compared to the expense and burden of prosecuting this litigation only on an individual basis. In the

absence of Class-wide adjudication, many members of the class may otherwise forego their rights as a result of the lesser amount in controversy on an individual basis, especially because prosecuting such a case may be burdensome. Class litigation is also superior because it will prevent duplicative litigation that would tax both the litigants and the courts. Such litigation would also risk inconstant judgments about Defendants' practices.

70. This action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).

## WISCONSIN CLASS ACTION ALLEGATIONS (RULE 23)

80. Plaintiff Pietkivitch brings the Seventeenth cause of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and the following classes: All Medical Records Retrievers who were employed by Defendants between September 9, 2011 and the date of final judgment in this matter ("the Wisconsin Class"). Excluded from the Wisconsin Class are Defendants, Defendants' legal representatives, officers, directors, assigns and successors, and the Court and Court personnel (including the judge presiding over this matter and their family members) and all persons who will submit appropriate requests for exclusion from the Wisconsin Class

71. The members of the Wisconsin Class are so numerous that joinder is impracticable, with the size of the Class at 40 or more individuals.

72. Defendants have acted or have refused to act on grounds generally applicable to the Wisconsin Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Wisconsin Class as a whole.

73.     Common questions of law and fact exist with respect to the Wisconsin Class and predominate over any questions unique to or effecting only selective members. Those questions include but are not limited to: (a) whether Plaintiff Pietkivitch and the Wisconsin Class were employees within the meaning of the WIMWL; (b) whether Defendants had a policy or practice of failing to pay Plaintiff and the Class minimum wage for all hours worked in violation of the WIMWL; (c) the nature and extent of class-wide injury and the measure of damages for those injuries; (d) whether Defendants' policy or practice of underpaying Plaintiff Pietkivitch and the class was instituted willfully or with reckless disregard for the law.

74.     The claims of Plaintiff Pietkivitch are typical of the claims of the Wisconsin Class because Plaintiff was subject to the same or extremely similar compensation policies and practices and has, along with the Wisconsin Class, sustained similar types of damages as a result of Defendants failure to comply with the WIMWL.

75.     Plaintiff Pietkivitch will fairly and adequately represent and protect the interests of the Wisconsin Class.  Plaintiff has retained competent and experienced counsel who has brought and litigated numerous class actions.  There is no conflict between Plaintiff Pietkivitch and the other members of the Wisconsin Class.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Wisconsin Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform polices practices, and procedures, which were in violation of the State Law.  The damages to be recouped by each member of the class, statutorily, are small compared to the expense and burden of prosecuting this litigation only on an individual basis.  In the

absence of Class-wide adjudication, many members of the class may otherwise forego their rights as a result of the lesser amount in controversy on an individual basis, especially because prosecuting such a case may be burdensome. Class litigation is also superior because it will prevent duplicative litigation that would tax both the litigants and the courts. Such litigation would also risk inconstant judgments about Defendants' practices.

77. This action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).

## COLLECTIVE ACTION ALLEGATIONS

78. Plaintiffs bring the First and Second causes of action on behalf of themselves and the following FLSA collective: All Medical Records Retrievers who were employed by Defendants between September 9, 2010 and the date of final judgment in this matter ("the Collective").

79. Defendants are liable to the Collective under FLSA for willfully failing to pay the Collective minimum wage and overtime wages and for violating record keeping and notification requirements. Upon information and belief, the Collective consists of many similar situated individuals who have been underpaid by Defendants in violation of FLSA and who will benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit. The Collective's members are known to Defendants, can be identified, and can be located with the use of Defendants' records. Notice should be sent to the Collective's members pursuant to 29 U.S.C. § 216(b).

## CLASS-WIDE FACTUAL ALLEGATIONS

80. During the periods in which Plaintiffs, the Classes, and the Collective were employed by Defendants, Defendants suffered and permitted Plaintiffs, the Classes, and the Collective to work without paying wages for all hours worked, without paying an overtime wage, without paying spread-of-hours compensation, and without providing proper notices or maintaining proper records.

81. Defendants had and persist with a policy or practice of minimizing labor costs by failing to pay Plaintiff, the Class, and the Collective, despite the applicable laws requirement that they do so.

82. Defendants' conduct toward Plaintiff, the Class and the Collective has been repetitive, willful, widespread, consistent, intentional and in violation of the applicable laws.

83. Defendants' conduct toward Plaintiffs, the Classes, and the Collective has caused significant damages to Plaintiffs, the Classes, and the Collective.

**FACTS OF PLAINTIFFS ZELLER'S, CARROLL'S, MERRILL'S, MEUNIER'S, MURPHY'S, BROOKING-VAN LONE'S, CROSS'S, STOWE'S, PIETKIVITCH'S, and OWENS'S  EMPLOYMENT**

84. Plaintiffs Zeller, Carroll, Merrill, Meunier, Murphy, Brooking-Van Lone, Cross, Stowe, Pietkivitch, and Owens were all employed by Defendants as "Medical Records Retriever" from various times from September 2007 to the present.  PDC maintains records of the employment dates of each of the Individual Plaintiffs, as well as the hours worked during their employment.

85. Individual Defendants were required to retrieve medical records from medical care providers around the nation on behalf of PDC's clients, who used such

records to determine claims for insurance and whether potential insured met underwriting standards. Individual Defendants each worked from their own home.

86.    PDC's marketed itself to clients as being able to obtain the records requested within nine days, purportedly the fastest in the industry.  To do this, PDC demanded that Individual Plaintiffs comply with rigorous policies which required Plaintiffs to work quickly and in a method directed by PDC at a fixed rate per case they were able to close.  PDC required Individual Plaintiffs to be available during set times, and Plaintiffs were not permitted to deviate from these times without informing PDC. Plaintiffs were penalized when they deviated from the set schedule, as described in greater detail, below. Individual Plaintiffs were not paid an hourly wage during the times they worked for PDC.  Rather, they were paid on a fee basis which did not equal minimum wage under the applicable state law or the FLSA.  To the extent that any Plaintiff was paid an hourly wage at various times during their employment, those periods of employment are not a part of this complaint.

87.    Individual Plaintiffs' employment required them to log into PDC's proprietary website for a set number of hours per day and comply with all regulations and policies in PDC's Guidebook, including regulations related to updating all cases assigned to each Medical Records Retriever by 4:30pm in the time zone in which the APS Statements to be retrieved were located, notifying PDC at a set time when Plaintiff was unable to work on a day assigned, "calling back" on all faxes sent before 4:30pm in the time zone the fax was sent into, and starting cases within one hour of receiving a case. Failure to comply with these polices incurred financial penalties. For example, any case

not updated by 4:30 p.m. in the time zone in which the APS Statement to be retrieved was located incurred a $1.00 "negligence cases fee."

88.     Individual Plaintiffs reported directly to supervisors in Queens, New York. Cases were assigned by PDC and Plaintiffs were unable to decline a case. Cases could be removed from Individual Plaintiffs at will by supervisors.

89.     Individual Plaintiffs worked from home during hours established by PDC. Plaintiffs paid expenses related to their work for PDC, including fees for internet usage, phone lines, and equipment maintenance on personal computers. However, despite paying their own expenses and using their own equipment, PDC exercised total control over the methods of Plaintiff's work, going so far as directing Plaintiffs to required websites to clarify wrong numbers, requiring Plaintiffs to conduct their document retrieval services in a set manner, and log in and out of their accounts at set times.

90.     PDC prioritized some cases over others by indicating that certain cases were "Rush." When a PDC supervisor marked a case as "Rush," a Retriever was required to follow precise instructions regarding how those cases were to be handled.

91.     PDC would set a "records fee" amount for each case. Retrievers were required to obtain approval before exceeding the records fee. Retrievers were provided a very detailed protocol to follow when contacting doctor's offices to obtain files. Retrievers were directed how to address deficiencies in medical information releases provided by patients, including but not limited to stating the precise deficiency in the release so that PDC's "Special Release Department" could follow up.

92.     While working as a Medical Records Retriever, PDC required Plaintiffs to do the following when making a first update of a case assigned, including:

"1) Is client a patient. (If facility will not confirm this, then answer is "the facility would not confirm that client is a patient..)
2) What is the expected TaT (you can add here how you tried to rush them and what their response was)
3) Does the facility require a prepay (You do not have to enter in the amount, just whether or not they require one)
4) Does the facility have the records that we are requesting? Will office notes be released?
5) The name of the person you are speaking with."

93.     PDC required a 100% quiet work environment.  Retrievers who did not meet this requirement were subject to immediate termination.

94.     Plaintiffs were trained by PDC, did not invest in PDC and had no opportunity for profit or loss beyond their wages, used little skill or independent initiative to perform their work, were permanent employees of PDC for an indefinite duration, and Plaintiffs' work was central to PDC's business.

95.     Individual Plaintiffs frequently worked more than 40 hours per week, but were not compensated at an overtime rate, nor compensated at the minimum wage for the time they worked.

96.     Individual Plaintiffs were paid solely on a fee basis for their work, and the fee basis never exceeded $455 per week.   In addition, Plaintiffs compensation was reduced if not performed to PDC's standards.  Pay deductions in the event of an absence, even part of the day, taken by PDC in 2010 were as follows:

"Each case that the sub calls and reaches a live personnel, the retriever will be charged .75.  Each case that the sub calls and does not reach a live person, the retriever will be charged .60.  Each case that the sub is unable to call, the retriever will be charged .50.  If the subbing department is unable to arrange a sub, the retriever will be charged .50 for each uncalled case"

97.     Plaintiffs' primary duty was the retrieval of APS Statements, work unrelated to PDC's management or general business operations of PDC or PDC's customers and work that did not require the use of discretion and independent judgment.

98.     Individual Plaintiffs did not receive spread-of-hour compensation.

99.     Defendants have failed to pay wages to Individual Plaintiff for all hours worked.

100.    Defendants failed to provide Individual Plaintiffs with a wage statement as required by applicable statues.

101.    Defendants acted willfully in avoiding the minimum wage, overtime, and spread-of-hours requirements of applicable statutes

102.    Defendants' failure to pay Individual Plaintiffs for all hours worked pursuant to applicable statutes was willful, intentional, in bad faith and has caused Plaintiff significant damages.

103.    Defendants' unlawful conduct has been pursuant to a corporate policy or practice of minimizing labor costs by denying Individual Plaintiffs compensation and statutorily required notice, all in violation of the applicable statutes.

## CAUSES OF ACTION

### Cause of Action #1
### Minimum Wages Due Under the FLSA Brought on Behalf of Individual Plaintiffs and the Collective

104.    Plaintiff repeats and re-alleges the allegations set forth in all preceding paragraphs.

105.     FLSA, specifically, 29 U.S.C. § 206, requires employers such as Defendants to pay wages at the following rate during Plaintiff's and the Collective's employment: $7.25 per hour.

106.     Plaintiff and the Collective were employees. *See* 29 U.S.C. §203(e).

107.     Defendants suffered or permitted Plaintiff and the Collective to work and were Plaintiff's and the Collective's employers.  *See* 29 U.S.C. § 203.

108.     Plaintiff and the Collective engaged in commerce and/or the production of goods for commerce and were employed by an entity engaged in commerce and/or in the production of goods for commerce. *See* 29 U.S.C. §§ 203, 206.

109.     Defendants were engaged in commerce and/or the production of goods for commerce. *See* 29 U.S.C. §§ 203, 206.

110.     None of the exemptions found in 29 U.S.C. § 213 apply to Plaintiff and the Collective.

111.     Defendants are employers and therefore have violated FLSA by failing to compensate Plaintiff and the Collective at the rate of at least $7.25 per hour.  *See* 29 U.S.C. § 203.

112.     Defendants failed to pay Plaintiff and the Collective minimum wages for all hours worked in violation of 29 U.S.C. § 206.

113.     Defendants' failure to pay Plaintiff and the Collective for all hours worked was willful.  Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Collective at the minimum wage, at least, was unlawful. Defendants have not made a good faith effort to comply with FLSA.

114. Defendants, for the above reasons, are liable to Plaintiff and the Collective for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by 29 U.S.C. § 216(b).

### Cause of Action #2
### Overtime Wages Due Under FLSA Brought on Behalf of Individual Plaintiffs and the Collective

115. Plaintiff repeats and re-alleges the allegations set forth in all preceding paragraphs.

116. FLSA, specifically, 29 U.S.C. § 207, requires employers such as Defendants to pay overtime wages at a rate equal to one and one-half times the regular rate for each hour worked longer than forty hours in a workweek.

117. Plaintiff and the Collective regularly worked in excess of forty hours per week.

118. Plaintiff and the Collective were employees. *See* 29 U.S.C. §203(e).

119. Defendants suffered or permitted Plaintiff and the Collective to work and were Plaintiff's and the Collective's employers. *See* 29 U.S.C. § 203.

120. Plaintiff and the Collective engaged in commerce and/or the production of goods for commerce and were employed by an entity engaged in commerce and/or in the production of goods for commerce. *See* 29 U.S.C. §§ 203, 206.

121. Defendants were engaged in commerce and/or the production of goods for commerce. *See* 29 U.S.C. §§ 203, 206.

122. None of the exemptions found in 29 U.S.C. § 213 apply to Plaintiff and the Collective.

123.     Defendants failed to pay Plaintiff and the Collective at the rate of one and one-half times the minimum wage in violation of 29 U.S.C. § 207.

124.     Defendants are employers and therefore have violated FLSA by failing to compensate Plaintiff and the Collective for overtime hours at the rate of one and one-half times the minimum wage.  *See* 29 U.S.C. § 203.

125.     Defendants' failure to pay Plaintiff and the Collective overtime wages was willful.   Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Collective at the required overtime rate was unlawful. Defendants have not made a good faith effort to comply with FLSA.

126.     Defendants, for the above reasons, are liable to Plaintiff and the Collective for overtime wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by 29 U.S.C. § 216(b).

**Cause of Action #3**
**Minimum Wages Due Under CLL Brought on Behalf of Plaintiff Zeller and the California Class**

127.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

128.     CLL, specifically CLL §§ 1182.12 and 1194 and the supporting regulations 8 CCR § 11040.4, requires employers such as Defendants to pay wages at the following rate during Plaintiff's and the Class's employment: $8.00 per hour.

129.     Plaintiff and the Class were employees.  *See* 8 CCR § 11040.2.

130.     Defendants engaged, suffered, or permitted Plaintiff and the Class to work and were Plaintiff's and the Class's employers. *See* § 1197.1 and 8 CCR § 11040.2.

131.     Defendants failed to pay Plaintiff and the Class minimum wages for all hours worked in violation of CLL §§ 1182.12 and 1194 and the supporting regulations 8 CCR § 11040.4.

132.     Defendants' failure to pay Plaintiff and the Class for all hours worked was willful.   Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the minimum wage, at least, was unlawful. Defendants have not made a good faith effort to comply with CLL.

133.     Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by CLL §§ 1194, 1194.2 and 1197.1.

### Cause of Action #4
### Overtime Wages Due Under CLL Brought on Behalf of Plaintiff Zeller and the California Class

134.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

135.     CLL, specifically CLL § 510 and the supporting regulations 8 CCR § 11040.3, requires employers such as Defendant to pay overtime wages at a rate equal to one and one-half times the regular rate for each hour worked longer than eight hours in a workday or forty hours in a workweek.

136.     Plaintiff and the Class worked hours in excess of eight hours per day and in excess of forty hours per week.

137.     Plaintiff and the Class were employees.  *See* 8 CCR § 11040.2.

138.     Defendants engaged, suffered or permitted Plaintiff and the Class to work and were Plaintiff's and the Class's employers. *See* 8 CCR § 11040.2.

139.     None of the exemptions found in 8 CCR § 11040.1 apply.

140.     Plaintiff and the Class were not provided overtime pay in violation of CLL § 510.

141.     Defendants' failure to pay Plaintiff and the Class at an overtime rate was willful.     Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the overtime rate was unlawful.  Defendants have not made a good faith effort to comply with CLL.

142.     Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by CLL § 1194.

### Cause of Action #5
**Unfair Business Practices Under  California Business and Professional Code § 17200
Brought on Behalf of Plaintiff Zeller and the California Class**

143.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

144.     By violating the foregoing California statutes and regulations, the acts of Defendants constitute unfair and unlawful business practices under Business and Professions Code §17200 *et seq.*

145.     Defendants' violation of CLL constitutes a business practice because it was done repeatedly over a significant period of time in a systematic manner to the detriment of Plaintiff and the Class.

146. At all relevant times herein, Plaintiff and the Class have suffered damages and request damages and/or restitution for all monies and profits to be disgorged from Defendants in an amount to be determined at trial, plus prejudgment interest, plus other interest.

<u>Cause of Action #6</u>
**Minimum Wages Due Under OMFWS Brought on Behalf of Plaintiff Merrill and Plaintiff Owens and the Ohio Class**

147. Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs.

148. OMFWS, specifically OMFWS § 4111.02 and Section 34, Article II of the Ohio Constitution, requires employers such as Defendants to pay wages at the following rate during Plaintiffs' and the Class's employment: $6.85 per hour for hours worked from January 1, 2007 to December 31, 2007, $7.00 per hour for hours worked from January 1, 2008 to December 31, 2008, $7.30 per hour for hours worked from January 1, 2009 to December 31, 2010, $7.40 per hour for hours worked from January 1, 2011 to December 31, 2011, $7.70 per hour for hours worked from January 1, 2012 to December 31, 2012 and $7.85 per hour for hours worked after January 1, 2013.

149. Plaintiffs and the Class were employees. *See* OMFWS § 4111.14.

150. Defendants' annual gross receipts exceeded two hundred fifty thousand dollars.

151. Defendants suffered or permitted Plaintiffs and the Class to work and were Plaintiff's and the Class's employers. *See* OMFWS § 4111.02 and Ohio Const. Article II, Section 34a.

152.    Defendants failed to pay Plaintiffs and the Class minimum wages for all hours worked in violation of OMFWS, specifically § 4111.02 and Ohio Const. Article II, Section 34a.

153.    Defendants' failure to pay Plaintiffs and the Class for all hours worked was willful.  Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the minimum wage, at least, was unlawful. Defendants have not made a good faith effort to comply with OMFWS.

154.    Defendants, for the above reasons, are liable to Plaintiffs and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus attorneys' fees and costs and all other compensation required by OMFWS § 4111.14 and Article II, Section 34a of the Ohio Constitution.

<u>Cause of Action #7</u>
**Overtime Wages Due Under OMFWS Brought on Behalf of Plaintiff Merrill and the Ohio Class**

155.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

156.    OMFWS, specifically OMFWS § 4111.03, requires employers  such as Defendants to pay overtime wages at a rate equal to one and one-half times the employee's wage rate for hours worked in the excess of forty hours in one workweek.

157.    Plaintiff and the Class regularly worked in excess of forty hours per week.

158.    Plaintiff and the Class were employees.  *See* OMFWS § 4111.03

159.    Defendants suffered or permitted Plaintiff and the Class to work and were Plaintiff's and the Class's employers. *See* OMFWS § 4111.03

160. Defendants' annual gross volume of sales exceeds one hundred fifty thousand dollars.

161. None of the exemptions found in OMFWS § 4111.03 apply.

162. Plaintiff and the Class were not provided overtime pay in violation of OMFWS § 4111.03.

163. Defendants' failure to pay Plaintiff and the Class at an overtime rate was willful. Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the overtime rate was unlawful. Defendants have not made a food faith effort to comply with OMFWS.

164. Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by OMFWS § 4111.10.

### Cause of Action #8
**Minimum Wages Due Under MMWS Brought on Behalf of Plaintiff Meunier and the Maine Class**

165. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

166. MMWS, specifically MMWS §§ 661 and 664, requires employers such as defendants pay wages at the following rate during Plaintiff's and the Class's employment: $7.00 per hour for hours worked from October 1, 2007 to September 91, 2008, $7.25 per hour for hours worked from October 1, 2008 to September 91, 2009, and $7.50 per hour for hours worked after October 1, 2009.

167.    Plaintiff and the Class were permitted to work and were Defendants' employees.  *See* MMWS § 663.

168.    Defendants were employers under the applicable law.

169.    Defendants failed to pay Plaintiff and the Class minimum wages for all hours worked in violation of MMWS §§ 661 and 664.

170.    Defendants' failure to pay Plaintiff and the Class for all hours worked was willful.  Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the minimum wage, at least, was unlawful. Defendants have not made a good faith effort to comply with MMWS.

171.    Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by MMWS § 670.

### Cause of Action #9
### Overtime Wages Due Under MMWS Brought on Behalf of Plaintiff Meunier and the Maine Class

172.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

173.    MMWS, specifically MMWS § 664(3), requires employers such as Defendants to pay overtime wages at a rate equal to one and one-half times the regular hourly rate for all hours worked in excess of forty hours in a workweek.

174.    Plaintiff and the Class regularly worked in excess of forty hours per week.

175.    Plaintiff and the Class were permitted to work and were Defendants' employees. *See* MMWS § 663.

176. Defendants were employers under the applicable law.

177. None of the exemptions found in MMWS § 664(3) apply.

178. Plaintiff and the Class were not provided overtime pay in violation of MMWS § 664(3).

179. Defendants' failure to pay Plaintiff and the Class at an overtime rate was willful. Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the overtime rate was unlawful. Defendants have not made a good faith effort to comply with MMWS.

180. Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by MMWS § 670.

## Cause of Action #10
**Minimum Wages Due Under IMWL Brought on Behalf of Plaintiff Murphy and the Illinois Class**

181. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

182. IMWL, specifically IMWL §§ 105/2 and 105/4, requires employers such as defendant to pay wages at the following rate during Plaintiff's and the Class's employment: $6.50 per hour for hours worked from January 1, 2005 to June 30, 2007, $7.50 per hour for hours worked from July 1, 2007 to June 30, 2008, $7.75 per hour for hours worked from July 1, 2008 to June 30, 2009, $8.00 per hour for hours worked from July 1, 2009 to June 30, 2010, and $8.25 per hour for hours worked after July 1, 2010.

183.    Plaintiff and the Class were permitted to work and were Defendants' employees. *See* IMWL § 105/3

184.    Defendants were employers. *See* IMWL § 105/3.

185.    Defendants' failure to pay Plaintiff and the Class for all hours worked was willful.   Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the minimum wage, at least, was unlawful. Defendants have not made a good faith effort to comply with IMWL.

186.    Defendants for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by IMWL § 105/12.

<u>**Cause of Action #11**</u>
**Overtime Wages Due Under IMWL  Brought on Behalf of Plaintiff Murphy and the Illinois Class**

187.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

188.    IMWL, specifically IMWL § 105/4a, requires employers such as Defendant to pay overtime wages at a rate not less than one and one-half times the regular rate for each hour worked in excess of forty hours in a workweek.

189.    Plaintiff and the Class regularly worked in excess of forty hours per week.

190.    Plaintiff and the Class were permitted to work and were Defendants' employees.  *See* IMWL § 105/3.

191.    Defendants were employers. *See* IMWL § 105/3.

192.    None of the exemptions found in IMWL §§ 105/3 and 105/4a apply.

193.    Plaintiff and the Class were not provided overtime pay in violation of IMWL § 105/4a.

194.    Defendants' failure to pay Plaintiff and the Class at an overtime rate was willful.  Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the overtime rate was unlawful.  Defendants have not made a good faith effort to comply with IMWL.

Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by IMWL § 105/12.

**Cause of Action # 12**
**Minimum Wages Due Under CMWA Brought on Behalf of Plaintiff Brooking-Van Lone and the Connecticut Class**

195.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

196.    CMWA, specifically CMWA § 31-60, requires employers such as Defendants to pay wages at the following rate during Plaintiff's and the Class's employment: $7.65 per hour for hours worked from January 1, 2007 to December 31, 2008, $8.00 per hour for hours worked from January 1, 2009 to December 31, 2009, and $8.25 per hour for hours worked after January 1, 2010.

197.    Plaintiff and the Class were employees.  *See* CMWA § 31-58.

198.    Defendants employed or suffered Plaintiff and the Class to work and were Plaintiff's and the Class's employers.  *See* CMWA § 31-58.

199. Defendants failed to pay Plaintiff and the Class for all hours worked in violation of CMWA §31-60.

200. Defendants' failure to pay Plaintiff and the Class for all hours worked was willful. Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the minimum wage, at least, was unlawful. Defendants have not made a good faith effort to comply with CMWA.

201. Defendants, for the above reasons, are liable to Plaintiff and the Class for all wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by CMWA § 31-68.

### Cause of Action #13
### Overtime Wages Due Under CMWA Brought on Behalf of Plaintiff Brooking-Van Lone and the Connecticut Class

202. Plaintiff repeats and re-alleges the allegations in the preceding paragraphs.

203. CMWA, specifically CMWA § 31-76c, requires employers such as Defendants to pay overtime wages at a rate equal to one and one-half times the regular rate for each hour worked longer than forty hours in a workweek.

204. Plaintiff and the Class regularly worked in excess of forty hours per week.

205. Plaintiff and the Class were employees. *See* CMWA § 31-58.

206. Defendants employed or suffered Plaintiff and the Class to work and were Plaintiff's and the Class's employers. *See* CMWA § 31-58.

207. None of the exemptions found in CMWA § 31-76i apply.

208. Plaintiff and the Class were not provided overtime pay in violation of CMWA § 31-76c.

209.    Defendants' failure to pay Plaintiff and the Class at an overtime rate was willful.   Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the overtime rate was unlawful.  Defendants have not made a good faith effort to comply with CMWA.

210.    Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus interest, plus other interest, plus attorneys; fees and costs and all other compensation required by CMWA §§ 31-68 and 31-72.

**Cause of Action #14**
**Minimum Wages Due Under WIMWL Brought on Behalf of Plaintiff Pietkivitch and the Wisconsin Class**

211.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

212.    WIMWL, specifically WIMWL § 104.02 and the supporting regulations, DWD §§ 272.02 and 272.03, require employers such as Defendants to pay wages at the following rate during Plaintiff's and the Class's employment: $7.25 per hour.

213.    Plaintiff and the Class were employees.  *See* WIMWL § 104.01.

214.    Defendants were employers.  *See* WIMWL § 104.01 and DWD § 272.01.

215.    Defendants failed to pay Plaintiff and the Class the minimum wages for all hours worked in violation of WIMWL § 104l.02 and DWD §§ 272.02 and 272.03.

216.    Defendants' failure to pay Plaintiff and the Class for all hours worked was willful.   Defendants were aware or should have been aware that their failure to compensate Plaintiff and the Class at the minimum wage, at least, was unlawful. Defendants have not made a good faith effort to comply with WIMWL.

217.     Defendants, for the above reasons, are liable to Plaintiff and the Class for wages earned in an amount to be determined at trial, plus statutory liquidated damages, plus prejudgment interest, plus other interest, plus attorneys' fees and costs and all other compensation required by Wis. Stat. Ann. § 109.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, the Collective, and the Class seeks the following relief:

a.     That Plaintiff be allowed to give notice of this action, or that the court issue such notice, to members of the Collective.  Such notice shall be given at the earliest possible time and shall inform members of the Collective that this action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b.     Unpaid minimum wages, overtime pay, and an additional and an equal amount as liquidated damages pursuant to FLSA and the supporting regulations;

c.     Unpaid overtime and unpaid minimum wages pursuant to CLL and the supporting regulations, and an additional and an equal amount as liquidated damages pursuant to CLL.

d.     Compensatory damages, restitution of all monies due, and disgorgement of profits from the unlawful business practices of Defendants under California Business and Professional Code § 17200

e.     Unpaid overtime and unpaid minimum wages pursuant to OMFWSA and the supporting regulations, and an additional and an equal amount as liquidated damages pursuant to OMFWSA.

f.      Unpaid overtime and unpaid minimum wages pursuant to MMWS and the supporting regulations, and an additional and an equal amount as liquidated damages pursuant to MMWS.

g.      Unpaid overtime and unpaid minimum wages pursuant to IMWL and the supporting regulations, and an additional and liquidated damages equal to 2% of the amount of any such underpayments for each month following the date of the payment during which such underpayments remain unpaid pursuant to IMWL.

h.      Unpaid overtime and unpaid minimum wages pursuant to CMWA, and an additional and equal amount as liquidated damages.

i.      Unpaid overtime and unpaid minimum wages pursuant to WIMWL and the supporting regulations, and an additional and equal amount as liquidated damages pursuant to WIMWL.

j.      Certification of the Classes set forth above pursuant to Fed. R. Civ. Pro. 23;

k.      Designation of Plaintiffs as class representatives and Strauss Law PLLC and Maurice Pianko, Attorney at Law, as Class Counsel for each class;

l.      Pre and post judgment interest;

m.      Reasonable attorneys' fees and costs of the action;

n.      Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Class Action Complaint.

Dated: New York, New York
       December 16, 2013

By:     _/s/ Jesse Strauss_____
        Jesse Strauss (JS 0212)
        STRAUSS LAW PLLC
        305 Broadway, 9th Floor
        New York, NY 10007
        jesse@kurzonstrauss.com
        jesse@strausslawpllc.com
        Phone (212) 822-1496
        Facsimile (212) 822-1407

        _/s/ Maurice Pianko_____
        Maurice Pianko (MP 6486)
        PIANKO LAW GROUP
        PLLC
        55 Broad Street, #13F
        New York, NY 10004
        mpianko@gmail.com
        Phone (646) 801-9675
        Facsimile (973) 689-8874

*Attorneys For Dominica R. Zeller, Elana P. Carroll, Shari Merrill, Tammy Meunier, Sheila F. Murphy  On Behalf Of Themselves And All Others Similarly Situated.*