UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOMINICA R. ZELLER, ELANA P. CARROLL, SHARI MERRILL, , TAMMY MEUNIER, SHEILA F. MURPHY, SHERI BROOKING-VAN LONE, AMY CROSS, AMY STOWE, JANE PIETKIVITCH, and RUBY OWENS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>PDC CORPORATION, d/b/a PDC OF NEW YORK, PARAMEDS.COM, INC., d/b/a PDC RETRIEVALS, and ELI ROWE,<br><br>Defendants. | Civ. No.: 1:13-cv-05035 (ARR) (JO)<br><br>**AFFIRMATION OF JESSE STRAUSS IN SUPPORT OF PLAINTIFFS' PLAINTIFFS' UNOPPOSED MOTION TO FILE A THIRD AMENDED COMPLAINT, UNOPPOSED MOTION TO CERTIFY THE FLSA COLLECTIVE, UNOPPOSED MOTION TO APPROVE THE CLASS ACTION SETTLEMENT, UNOPPOSED MOTION TO CERTIFY THE SETTLEMENT CLASSES, UNOPPOSED MOTION TO APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND UNOPPOSED MOTION TO APPROVE THE PROPOSED NOTICE OF SETTLEMENT** |

Jesse Strauss, a member of this Honorable Court, Affirms as follows:

1. Annexed hereto as Exhibit A is the settlement agreement between Plaintiffs Dominica R. Zeller, Elena P. Carroll, Shari Merrill, Tammy Meunier, Sheila F. Murphy, Sheri Brooking-Van Lone, Amy Cross, Amy Stowe, Jane Pietkivitch, Janice Bartoldus, Ruby Owens, the Collective and the Class, and Defendants PDC Corporation, d/b/a PDC of New York, Parameds.com, Inc., d/b/a PDC Retrievals, RES Service Corp. and Eli Rowe ("Defendants").

2. Annexed hereto as Exhibit B is the Notice of Pendency of Class Action and Proposed Settlement to be sent to members of the Class.

Investigation

3. From mid-July 2013 through the filing of the initial complaint in this matter, I worked extensively with Plaintiffs Dominica R. Zeller, Elena P. Carroll, Shari Merrill, Tammy Meunier, Sheila F. Murphy, Sheri Brooking-Van Lone, Amy Cross, Amy Stowe, and Jane

1

Pietkivitch ("Named Plaintiffs") to research and investigate their claims against Defendants. The investigation required me to learn how Defendants operated their work-from-home Medical Record Retriever program and research arcane areas of federal and state wage and hour law to identify violations. Despite having substantial experience in federal wage-and-hour law, Defendants program was unique and determining its legality required extensive work.

Pre-Certification of a Nationwide Collective

4. After filing the Complaint, my co-counsel and I moved promptly to conditionally certify the nationwide collective and send notice of the FLSA lawsuit. We did so because the Medical Record Retrievers who were to be members of the proposed collective were spread out around the nation, worked from home, and very few had any contact with other Medical Record Retrievers. We felt, therefore, that it was important for as many Medical Record Retrievers as possible to be aware of the matter. Additionally, it was unclear to us how many Medical Record Retrievers worked for Defendants. Estimates varied widely. It turned out that there were far fewer than we initially believed.

5. After the Court declined to authorize the sending of notice to the nationwide collective and required additional information, I worked extensively with the Named Plaintiffs to identify the hours they recalled working for Defendants. I also worked extensively with the Named Plaintiffs to determine the consistent aspects of their work to show they were subject to similar working conditions, regulations, and payment.

6. Within two weeks of the Court permitting notice of to be sent to members of the nationwide collective, my co-counsel Maurice Painko arranged for it to be done. 433 former Medical Record Retrievers were then notified of the lawsuit, and provided the option to become members of the collective.

7. The last date for Medical Record Retrievers to become a member of the collective was August 30, 2014. By that date, there were 110 members of the collective. From that point forward, myself and co-counsel Maurine Painko represented 120 members of the collective, spread out in two dozen states around the nation. Mr. Painko and I regularly received calls from members of the collective seeking information regarding the matter.

8. Upon reviewing the documents provided by the Named Plaintiffs and members of the collective, my co-counsel and I realized that we had failed to name RES Servicing Corp., and entity which had paid some of the Medical Record Retrievers for their work. In May 2014 we then moved to amend the Complaint to add RES Servicing Corp as a Defendants. That motion was granted.

Discovery

9. Defendants served upon Named Plaintiffs twenty-three separate interrogatories to be responded to by each of the Named Plaintiffs and five members of the collective who had opted-in even before notice was sent. Defendants also served thirty-eight document demands upon each of the Named Plaintiffs and the five opt-ins. With the extensive assistance of the Named Plaintiffs, I timely responded to the interrogatories and document demands on May 19, 2014.

10. I also served document demands and interrogatories on Defendants. While I expected a somewhat limited production, Defendants produced 113,727 pages of documents responsive to Plaintiffs' First Request for the Production of Documents, not including a Microsoft excel database consisting of 689,461 rows, containing information regarding each transaction entered into Defendants' "Case Database" where Defendants tracked the status of the Named Plaintiffs' work. Importantly, these documents only related to the Named Plaintiffs. Apparently, each member of the collective also had thousands of pages of associated documents. Although we

demanded records of the hours worked by Plaintiffs and members of the collective, Defendants claimed that none existed because Defendants did not track the hours worked by Medical Record Retrievers.

11. We engaged in numerous meet and confers, preceded by lengthy letters regarding purported deficiencies in Defendants' and Plaintiffs' respective production. My co-counsel hired several temporary attorneys to review, log and do a preliminary analysis on the all 113,727 pages of documents. I analyzed the Case Database myself, as I deemed it the only record of the times in which the named Plaintiffs were working.

12. After the period for opting into the FLSA collective had ended, Defendants served a second set of twenty-five interrogatories upon each member of the collective. Defendants also served a second set of 41 document demands upon each member of the collective.

13. In late September 2014, the parties decided that in light of the discovery already exchanged, the definite size of the collective, and the heavy burdens on the parties in responding to additional discovery, settlement negotiations were appropriate. As part of the negotiations, and to understand the amount of damages sought by the collective because no records from Defendants were provided, and to keep discovery going so as not to delay the case more than absolutely necessary, I agreed to respond to Defendants' Second Set of Interrogatories. My co-counsel and I made a tremendous effort to get each member of the collective to provide verified responses to the interrogatories. Only 53 of the 110 members of the collective responses to our requests.

14. It is unclear why members of the collective were reluctant to provide discovery. More than likely, they were not invested in the outcome of the case because they had only worked for Defendants for a short period. Many of the members of the collective worked for a very short

4

time, while others worked for Defendants for less than 10 hours a week, and Defendants were among multiple other employers.

15. We were unable to settle the matter at that time. After settlement negotiations ended, the parties re-commenced discovery in earnest. The Court required us to go back to the recalcitrant opt-ins to request additional information, which we did. Still, only a few additional members of the collective provided responses. At no time did the Court rule on whether "sampling" was appropriate, meaning that Plaintiffs would potentially be required to produce documents responsive to 41 different demands for each of the member of the collective, as well as respond to twenty-five interrogatories also on behalf of each member of the collective. We believed that sampling was appropriate for discovery but I believed that members of the collective would need to present some sworn testimony in written form for trial. It was unclear how many members of the collective would be interested in doing so.

16. Without deciding whether sampling was appropriate, but to move discovery along, the parties agreed that Plaintiffs would provide document discovery and interrogatories from 20 members of the collective selected by Defendants. Plaintiffs also continued to demand a more fulsome document production from Defendants, but Defendants claimed that many of the documents were inaccessible due to their arcane computer systems. The Court also allowed witnesses to be deposed in their homes, which would have required travel to 30 different deposition locations around the nation.

Settlement Negotiations

17. Plaintiffs and Defendants both agreed that the trial on this matter would be long and complex. Named Plaintiffs and members of the collective would be required to submit evidence of the hours they worked, and Defendants would likely be able to cross-examine them.

5

In addition, Defendants intended to call witnesses, both expert and lay, who would testify that the amount of time required for each task was minimal, and that Named Plaintiffs and members of the collective were overstating the hours they worked.

18. It was also unclear to me whether liquidated damages and the three year limitation period would be appropriate. Defendants had designed their program in a novel manner, and may have believed, in good faith, that the Medical Record Retrievers were independent contractors.

19. In January 2015, Defendants offered to settle the case, and Plaintiffs rejected the offer. Based on Plaintiffs' calculations, maximum damages if the case went to trial was $1.5 million plus attorney fees, assuming full participation by the opt-in Plaintiffs, liquidated damages and a three year limitation period, none of which was assured. After several weeks of back and forth and heated negotiations, including two in person meetings, one where Defendant Eli Rowe was present, the parties reached an agreement to settle the matter for $275,000, inclusive of incentive awards, legal fees and costs, but exclusive of the costs of administering the settlement. As reflected in the Settlement Agreement, we also agreed to settle the matter on behalf of classes in California, Connecticut, Illinois, Maine, New York, Ohio and Wisconsin, which adds approximately 31 additional Medical Record Retrievers from those states who are not members of the collective but will now recover some wages from Defendants. The named Plaintiffs have approved the settlement.

20. Annexed hereto as Exhibit C is a copy of the Second Amended Complaint and annexed here as Exhibit B is the proposed Third Amended Complaint.

<u>My Background and Experience</u>

21. I am the founder and principal of Strauss Law, PLLC. Strauss Law specializes in Plaintiff side wage and hour litigation. I also maintain an active commercial litigation practice. I

6

received a juris doctorate from Brooklyn Law School in 2003, with honors. Since then, I have worked at two nationally recognized law firms, and clerked for a Federal District Court judge. I am admitted to the New York State bar, the Eastern District of New York, the Southern District of New York, the District Court for the District of Columbia, the Second Circuit Court of Appeals, and the Sixth Circuit Court of Appeals. I am a member in good standing at each of these courts. In addition, I have appeared *pro-hoc vice* in Courts around the nation.

22. As the principal of Strauss Law PLLC, I have substantial experience producing large scale class actions, serving as the coordinating counsel for proposed class action lawsuits against 14 educational institutions in five different states in 2011 to 2012, and am still co-counsel on two proposed class actions, one pending in the District of New Jersey and the other pending in the Central District of Florida.

23. Prior to opening Strauss Law PLLC I was an associate with Labaton Sucharow LLP from 2007 to 2010, a top securities class action firm, representing institutional investors and the classes they lead in multi-billion dollar investor class actions. Prior to that, I worked as an associate at the national law firm of Blank Rome LLP, from 2003 to 2006. From 2006 to 2007 I was a law clerk to the Honorable Dora Irizzary, a member of the bench of this district. *Id.* I have been selected as a "Super Lawyer – Rising Star" by Thompson Reuters every year since 2013. *Id.*

24. Strauss Law PLLC has been actively bringing collective actions for violations of FLSA against employers who fail to pay their interns. In settling these cases, I regularly receive fees in excess of $400 per hour for my work.

25. In connection with my work, I regularly read litigate related to employment law, to remain up to date on the latest legal developments.

Service Awards

26.    Plaintiffs will apply for service awards of for each Plaintiff in the following amounts: $2,000 to Sheri Brooking-Van Lone, $2,000 to Amy Cross, $15,000 to Dominica Zeller, $10,000 to Amy Stowe, $6,000 to Jane Peitkivich, $5,000 to Shelia Murphy, $10,000 to Tammy Meunier, $10,000 to Shari Merrill, $6,000 to Elena Carroll. Plaintiffs will not seek a service award for Ruby Owens and Janice Bartoldus due to their small contribution to this action. The service awards are provided in recognition of the extraordinary services provided by each Plaintiff, without whom no recovery would have been possible because I would not have had the information necessary to commence and litigate the matter. Plaintiffs have served the Class and the Collective well by assisting with the preparation of the complaint and the factual investigation of the claims and by shouldering the risks incurred as named Plaintiffs. I was in constant communication with the Plaintiffs throughout the pre-litigation and litigation stages of this case. Plaintiffs spent an inordinate amount of time responding to Defendants' twenty-three interrogatories and thirty-eight document demands, and were also prepared to be deposed, if necessary.

27.    I believe the settlement is fair and appropriate under the circumstances and believe my co-counsel and I worked hard to achieve a desirable result.

_____
Jesse Strauss