UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOMINICA R. ZELLER, ELANA P.
CARROLL, SHARI MERRILL, , TAMMY
MEUNIER, SHEILA F. MURPHY, SHERI
BROOKING-VAN LONE, AMY CROSS,
AMY STOWE, JANE PIETKIVITCH, and
RUBY OWENS, on behalf of themselves and
all others similarly situated,

Plaintiffs,                                    Civ. No.: 1:13-cv-05035 (ARR) (JO)

     -against-

PDC CORPORATION, d/b/a PDC OF NEW
YORK, PARAMEDS.COM, INC., d/b/a PDC
RETRIEVALS, and ELI ROWE,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO
FILE A THIRD AMENDED COMPLAINT, UNOPPOSED MOTION  TO CERTIFY THE
FLSA COLLECTIVE, UNOPPOSED MOTION TO APPROVE THE CLASS ACTION
SETTLEMENT, UNOPPOSED MOTION TO CERTIFY THE SETTLEMENT CLASSES,
UNOPPOSED MOTION  TO APPOINT STRAUSS LAW PLLC AS CLASS COUNSEL,
AND UNOPPOSED MOTION TO APPROVE THE PROPOSED NOTICE OF
SETTLEMENT**

STRAUSS LAW PLLC
305 Broadway, 7th Floor
New York, NY 10007
Phone: 212-822-1496
Email: Jesse@strausslawpllc.com

July 21, 2015

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

    I.    Procedural History ........................................................................2

    II.    Claims ...........................................................................................7

    III.    Settlement Negotiations ................................................................9

ARGUMENT ........................................................................................................... 10

    IV.    Plaintiffs Should be Permitted to File a Third Amended Complaint....................10

    V.    The Court Should Appoint of Plaintiffs' Counsel as Class Counsel ....................11

    VI.    The Court Should Provisionally Approval the FLSA Settlement.........................12

    VII.    The Court Should Preliminarily Approval of the Class Action Settlement..........12

    VIII.    Conditional Certification Of The Rule 23 Classes Is Appropriate .......................21

        A.    Numerosity.................................................................................23

        B.    Commonality..............................................................................24

        C.    Typicality...................................................................................25

        D.    Adequacy of the Named Plaintiffs.............................................26

        E.    Certification is Proper Under Rule 23(b)(3) ..............................27

            1.    Common Questions Predominate ...................................27

            2.    A Class Action is a Superior Mechanism for Settlement .............28

    IX.    The Court Should Approve the Notice Plan And Distribution Process.................29

CONCLUSION........................................................................................................ 31

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................27, 28

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946)...........................................................................................8

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001).........................................................................12

*Barfield v N.Y. City Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008)................................................................................8

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................27, 28, 29

*Bennet v. Carl's Towing, L.L.C.*,
  2005 U.S. Dist. LEXIS 36669 (W.D. Mo. Aug. 31, 2005)....................................8

*Brock v. Superior Care, Inc.*,
  840 F.2d 1054 (2d Cir. 1988)..............................................................................7

*Cagan v. Anchor Sav. Bank FSB*,
  No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ..............................21

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..............................................................18, 19, 21, 22

*Clark v. Ecolab Inc.*,
  Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. Nov.
  27, 2009) ..........................................................................................................13

*Clem v. Keybank, N.A.*,
  No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014)...........................26

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)................................................................................27

*Damassia v Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ..................................................................11, 29

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................ passim

*Gayle v. Harry's Nurses Registry, Inc.*,
  2012 U.S. Dist. LEXIS 28157 (E.D.N.Y. Mar. 1, 2012) ..........................................7

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982).............................................................................................25

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).................................................................................18

*Gortat v. Capala Bros., Inc.*,
  2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012) ......................................................24

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)................................................................................28

*Hoffmann-LaRoche Inc. v. Sperling*,
  493 U.S. 165 (1989) ............................................................................................12

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .......................................13

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................................20

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993).............................................................................30

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997)..........................................................................20

*In re Traffic Exec. Ass'n*,
  627 F.2d 631 (2d Cir. 1980)................................................................................13

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)................................................................................20

*Johnson v. Brennan*,
  No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) .........................30

*Johnson v. Brennan*,
  No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).........................17

*Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of
  Am.*,
  109 F.R.D. 391 (S.D.N.Y. 1986) ........................................................................25

*Kerce v. West Telemarketing Corp.*,
  575 F. Supp. 2d 1354 (S.D. Ga. 2008)..................................................................7

*Krause v. Manalapan Twp.*,
2011 U.S. Dist. LEXIS 112365 (D.N.J. Sept. 30, 2011) ........................................................8

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ...................................................................................12, 13

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ........................................................................................23, 26

*Marriott v. Cnty. of Montgomery*,
227 F.R.D. 159 (N.D.N.Y. 2005)...........................................................................................27

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)..................................................................................................13

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) ...........................................................................................28

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984) ..............................................................................................12

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...................................................................................17

*Noble v. 93 Univ. Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004) ...........................................................................................28

*Odom v. Hazen Transport, Inc.*,
275 F.R.D. 400 (W.D.N.Y. 2011).........................................................................................24

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)................................................................................................21

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 ........................................................................................................................23

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)..................................................................................................26

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986)..................................................................................................27

*Sewell v. Bovis Lend Lease, Inc.*,
2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)........................................................25, 27, 28, 29

*Sukhnandan v. Royal Health Care of Long Island LLC*,
No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) .........................................27

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ........................................26

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).............................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................................13

## STATUTES

29 U.S.C. § 216(b) .........................................................................................................................2

## RULES

29 C.F.R. § 785.23 .........................................................................................................................8

Fed. R. Civ. P. 23 ................................................................................................................... passim

Fed. R. Civ. P. 54(d)(2)................................................................................................................17

## PRELIMINARY STATEMENT

Subject to Court approval, Plaintiffs Dominica R. Zeller, Elena P. Carroll, Shari Merrill, Tammy Meunier, Sheila F. Murphy, Sheri Brooking-Van Lone, Amy Cross, Amy Stowe, Jane Pietkivitch and Ruby Owens,[1] ("Plaintiffs") and Defendants PDC Corporation, d/b/a PDC of New York, Parameds.com, Inc., d/b/a PDC Retrievals, RES Servicing Corp. and Eli Rowe ("Defendants") have settled this wage and hour class and collective action for $275,000. This sum is inclusive of Service Awards to the Plaintiffs, attorneys' fees and costs, but excludes expenses related to the administration of the class, which will be borne solely by Defendants.

As further set forth below, this was not a run-of-the-mill class and collective action, and the numerous exceptional factual and legal issues make this case extraordinary. Only through the dedicated and diligent work of all but one of the Plaintiffs, combined with the efforts of Plaintiffs' counsel and the good faith negotiations undertaken by Defendants, have the parties been able to reach a sizable settlement, one that provides the Defendants with a certain conclusion to their legal odyssey, while also providing the Plaintiffs with compensation they may not have received had the case proceeded. The settlement satisfies all of the criteria for preliminary approval.

Therefore, Plaintiffs respectfully request that the Court: (1) Permit Plaintiffs to file a Third Amended Complaint, adding a New York Class and a New York plaintiff, (2) Certify the FLSA collective for settlement purposes, which was conditionally certified on June 17, 2014 (ECF Dkt. No. 55); (3) Appoint Strauss Law class counsel; (4) Grant preliminary approval of the Settlement and the Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Strauss Affirmation; (5) Certify the Settlement Classes consisting of all Medical Record Retrievers

---

[1] Plaintiffs also move to amend the Complaint to add Janice Bartoldus, a New York resident as a Plaintiff in this matter and to file a Third Amended Complaint, attached as Exhibit D to the Affirmation of Jesse Strauss ("Strauss Affirmation" or "Strauss Aff."). This motion, too, is unopposed.

in the states of California, Connecticut, Illinois, Maine, New York, Ohio and Wisconsin; (5) Approve the Notice of Pendency of Class Action and Proposed Settlement ("Proposed Notice"), attached as Exhibit B to the Strauss Affirmation.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

After ten weeks of extensive investigation and correspondence between Plaintiffs and their counsel, On September 9, 2013, a Class and Collective Action Complaint was filed against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA"), New York State Labor Law ("NYLL"), California Labor Law ("CLL"), the Ohio Minimum Fair Wage Standards Act, ("OMFWSA"), the Maine Minimum Wages Statute ("MMWS"), the Illinois Minimum Wage Law, ("IMWL"), the Connecticut Minimum Wage Act ("CMWA"), Wisconsin Minimum Wage Law ("WIMWL") (the NYLL, CLL, OMFWSA, MMWS, IMWL, and CMWA are collectively referred to as "State Laws"). Plaintiffs alleged that they and similarly situated Medical Record Retrievers – workers who call medical facilities to obtain records for insurance companies allowing insurance companies to assess risk or adjudicate claims – were not properly paid the minimum wage, overtime, paid for all the hours worked, paid spread of hours compensation, and were not provided proper notifications as required by Federal law and applicable state law.

In November 2013, instead of an answer, Defendants requested permission to move to dismiss Defendant Eli Rowe from the action, and to dismiss the claims under the NYLL because there was no plaintiff who worked in New York, despite the fact that Defendants are New York businesses and Mr. Rowe resides in New York.  Plaintiffs requested permission to cross-move to toll the limitation period for Plaintiffs' FLSA claims and for conditional certification of a nationwide FLSA collective.  See ECF Dkt. Nos. 11 and 19.  On December 13, 2013, after a

conference with the Court, Plaintiffs agreed to file an Amended Complaint withdrawing the NYLL allegations.  The Amended Complaint was filed on December 16, 2013.  ECF Dkt. No. 24.  Shortly thereafter, Defendants advised the Court that they would not be making a motion to dismiss Mr. Rowe.  ECF Dkt. No. 25.  Defendants answered on January 2, 2014.  ECF Dkt. No. 30.

In letter briefs in December 2013, Defendants opposed the conditional certification of the nationwide collective and dissemination of notice.  In addition, although the Court directed the parties to agree on the wording on the proposed notice of conditional certification of the nationwide collective so that notice could be sent shortly after a decision on Plaintiffs' request, the parties failed to reach an agreement with respect to the wording of the proposed notice.  ECF. Dkt. No. 27.

On March 19, 2014, the Honorable James Orenstein declined to permit Plaintiffs to disseminate the proposed notice to the nationwide collective but allowed for the submission of additional evidence. ECF Dkt. No. 38.  In the interest of judicial economy, Judge Orenstein resolved the disputes regarding the wording of the proposed notice to be sent.  *Id.*  The Court also So Ordered the parties' joint proposed scheduling order.  ECF Dkt. No. 39.

After extensive conversations between Plaintiffs and counsel, and review of and collection of documents from Plaintiffs by counsel, on April 18, 2014 Plaintiffs filed eight additional affidavits in support of conditional certification of a nationwide collective and dissemination of notice of the FLSA collective action.  Strauss Aff. ¶ 5, ECF Dkt. Nos. 41-49.  Defendants filed a memorandum of law in opposition to Plaintiffs' renewed motion on May 16, 2014.  ECF Dkt. No. 50.  Plaintiffs submitted their reply memorandum of law on May 30, 2014.  On June 17, 2014, the Court granted Plaintiffs' motion to conditionally certify a nationwide collective and disseminate the notice previously ordered by the Court.  ECF Dkt. Nos. 54-55.  After some wrangling regarding

the scope of the information regarding members of nationwide conditional collective that Defendants were required to provide, as well as the timing of the production of the information, during the week of June 30, 2014 notice of the collective action was sent to 433 Medial Record Retrievers, nationwide, who had worked for Defendants from September 9, 2010 to September 9, 2013.  Strauss Aff. ¶ 6.   The notice required that any member of the conditional collective who wished to affirmatively opt-in do so within sixty days of the postmark.  ECF Dkt. No. 55.  Based on the dates that the collective notices were postmarked, the last date by which a member of the collective could opt in was August 30, 2014.  Strauss Aff. ¶ 7.   By that date, 105 members of the collective had opted in to the action. Strauss Aff. ¶ 7.   The total number of members of the collective is 120, which includes the ten Plaintiffs. *Id.*

After a review of the numerous documents provided by Plaintiffs, Plaintiff's counsel requested permission for leave to file a Second Amended Complaint adding RES Servicing Corp. as a Defendant.  ECF Dkt. No. 51.  RES Servicing Corp. had been omitted from the Complaint and the Amended Complaint because of a lack of understanding of its relationship with Defendants.  Strauss Aff. ¶ 8. Defendants opposed the request.  ECF Dkt. No. 53.  The Court then So Ordered a briefing schedule, and Plaintiff submitted a motion to amend. Defendants submitted an opposition, and Plaintiffs submitted a reply. ECF Dkt. Nos. 81-83.  On March 17, 2015, the Court granted Plaintiffs' motion to amend.  ECF Dkt. No. 101.

Pursuant to the joint scheduling order So Ordered by the Court, the parties had been propounding discovery on each other starting in March 2014, with responses due in May 2014. Defendants served upon Plaintiffs twenty-three separate interrogatories to be responded to by each of the ten Plaintiffs and five members of the collective who had opted-in even before notice was sent. Strauss Aff. ¶ 9.   Defendants also served thirty-eight document demands upon each of the

4

ten Plaintiffs and the five opt-ins. *Id.* Plaintiffs timely responded to the interrogatories and document demands on May 19, 2014. *Id.*

Also in March 2014 Plaintiffs served upon Defendants document demands and interrogatories. Strauss Aff. ¶ 10. Defendants timely responded to both and, in early July 2014, began producing responsive documents. *Id.* Defendants ultimately produced 113,727 pages of documents responsive to Plaintiffs' First Request for the Production of Documents, not including a Microsoft excel database consisting of 689,461 rows, containing information regarding each transaction entered into Defendants' "Case Database," the database where Defendants tracked the status of the 10 Plaintiffs' work. *Id.* Defendants, however, maintained that they did not track the hours in which Plaintiffs were working because, as independent contractors, Plaintiffs were permitted to work at any time they wished, so long as the task was timely completed. *Id.* All discovery was exchanged pursuant to a So Ordered Confidentiality Agreement and Protective Order. ECF Dkt. No. 57. During the summer of 2014, the parties engaged in numerous meet and confer sessions to address alleged deficiencies in the productions. Strauss Aff. ¶ 10. Plaintiffs reviewed, logged and categorized all 113,727 pages of documents, and analyzed, in detail, the Case Database. Strauss Aff. ¶ 11. After the period for opting into the FLSA collective had ended, Defendants served a second set of twenty-five interrogatories upon each of the 105 members of the collective. Strauss Aff. ¶ 12. Defendants also served a second set of 41 document demands upon each of the 105 members of the collective. *Id.*

In late September 2014, the parties decided that, in light of the discovery already exchanged, the definite size of the collective, and the heavy burdens on the parties in responding to additional discovery, settlement negotiations were appropriate. Strauss Aff. ¶ 13; ECF Dkt. No. 92. At the joint request of the parties, the Court adjusted the discovery deadlines to accommodate

5

settlement negotiations.  ECF Dkt. No. 92.  As part of the settlement negotiations, and to meet the Court's deadlines in the event that a settlement could not be consummated, Plaintiffs agreed to respond to Defendants' Second Set of Interrogatories, but not Defendants' Second Set of Document Demands.  Strauss Aff. ¶ 13.  Despite herculean efforts to obtain responses from each member of the collective, Plaintiffs were ultimately only able to obtain verified interrogatory responses demands from 53 of the members of the collective and the ten Plaintiffs. *Id.*

The parties failed to reach a settlement and full discovery resumed in November 2014. *Id.* Several of the discovery disputes that had been unresolved prior to settlement negotiations, as well as other disputes which had arisen since, were briefed in December 2014 and brought to the Court on January 14, 2015.  The Court resolved the disputes and permitted Defendants to take the depositions of the ten Plaintiffs and ten of the members of the collective, to be selected by Defendants.  ECF Dkt. No. 99.  Depositions were to be taken at a location convenient to the witness.  *Id*. In addition, the Court required Plaintiffs to respond to several of the interrogatories that Plaintiff had objected to and respond to Defendants' Second Request of the Production of Documents.  Strauss Aff. ¶ 14.  The Court did not rule on whether "sampling" was appropriate, meaning that Plaintiffs would potentially be required to produce documents responsive to forty-one different demands for each of the 105 member of the collective who had not previously responded, as well as respond to twenty-five interrogatories also on behalf each of the 105 members of the collective who had not previously responded.  *Id.* Without deciding whether sampling was appropriate, but to move discovery along, the parties agreed that Plaintiffs would provide document discovery and interrogatories from twenty of the opt-ins plaintiffs of their choosing.  Strauss Aff. ¶ 13.  Defendants, however, maintained that they were entitled to document

discovery and interrogatory responses from all 105 members of the collective, and would move to dismiss those members of the collective who declined to provide discovery.  Strauss Aff. ¶ 14.

In January 2015, Defendants communicated an offer to settle the case.  Strauss Aff. ¶ 15. The settlement offer was rejected by Plaintiffs.  *Id.* However, the parties entered into settlement discussions in earnest.  *Id.* After several weeks of back and forth, and heated negotiations including two in person meetings, one where Defendant Eli Rowe was present, the parties reached an agreement to settle the matter for $275,000, inclusive of Service Awards, legal fees and costs, but exclusive of the costs of administering the settlement.  *Id.*

## II.    Claims

In sum and substance, the Complaint alleged that Plaintiffs were classified as independent contractors but were, in fact, employees.  *Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir. 1988) (setting the elements to be considered when classifying workers as employees or independent contractors); *Gayle v. Harry's Nurses Registry, Inc.*, 2012 U.S. Dist. LEXIS 28157 (E.D.N.Y. Mar. 1, 2012); *Kerce v. West Telemarketing Corp*., 575 F. Supp. 2d 1354 (S.D. Ga. 2008).  As such, Defendants' compensation scheme, which paid Plaintiffs by the task, and not by the hour, violated the FLSA and the State Laws because the wages earned on a per-task basis did not equal the applicable minimum wage, and no overtime was paid.  Complaint, ECF Dkt. No. 1.

Defendants vigorously contested that Plaintiffs were employees and alleged that, even if they were employees, their agreed to compensation on a per-task basis far exceeded the minimum wage under FLSA and the State Laws, and was agreed to, and therefore fit within the "Homeworker" exemption to the FLSA's minimum wage and overtime requirements, codified as 29 CFR Sec. 785.23 and similar exceptions under state law. *Krause v. Manalapan Twp*., 2011 U.S. Dist. LEXIS 112365, 17-19 (D.N.J. Sept. 30, 2011) (applying the homeworker exemption where there was a reasonable agreement regarding the amount of uncompensated time the employee was

required to work from home caring for police dogs); *Bennet v. Carl's Towing, L.L.C.*, 2005 U.S. Dist. LEXIS 36669 (W.D. Mo. Aug. 31, 2005) (nightly work from home a dispatcher falls within the Homeworker Exception).  Defendants also contended that they had no records of when the Medical Record Retrievers were working.  Rather, their records consisted only of when tasks were completed and entries made into their computer systems.  While under such circumstances the recollection of the worker would govern (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)), Defendants claimed that individuals currently doing Plaintiffs' same job were able to complete their tasks in minutes and asserted that they would be able to offer evidence negating the inference that the hours that Plaintiffs claimed to have worked were actually worked. Strauss Aff. ¶ 15; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687-88.  Defendants also contended that any violations of FLSA were not willful and, therefore, there should only have a two year limitation period and no liquidated damages.  *Barfield v N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). From the outset of the case, the parties were eons apart with respect to both the facts and the law, a rarity in FLSA cases.  Strauss Aff. ¶ 16.

The legal uncertainty aside, during the course of discovery, Plaintiffs and Defendants both encountered numerous challenges that unexpectedly increased the cost of litigation.  Plaintiffs encountered difficulty collecting interrogatory responses and documents from over half of the members of the collective.  Strauss Aff. ¶¶ 14-15.   The reason for this was the relative inaccessibility of many of the members of the collective, who work from home, live in over two dozen different states, and possess varying levels of interest in the outcome of this case. Strauss Aff. ¶ 11.  Many members of the collective worked for a very short time for Defendants (some as little as two days), while others worked for Defendants for less than 10 hours a week, and Defendants were among multiple other entities for which they provided services.  Strauss Aff. ¶

11.  Plaintiffs' counsel believed that outside of the ten Plaintiffs and several highly motivated members of the collective, most members of the collective  had little interest in participating in discovery and, likely, trial.  *Id.*  Defendants encountered numerous document production issues as well, mainly because Defendants' records were stored in inaccessible computer systems that could only be searched slowly and at great expense.  Strauss Aff. ¶ 14.  The Court also required Defendants to travel to the homes of witnesses for depositions, potentially requiring at least thirty different depositions in thirty different locations around the nation.  *Id*.

### III.   <u>Settlement Negotiations</u>

After 105 plaintiffs opted in to the matter, Plaintiffs determined that, assuming each opt-in was able to come forward with sworn testimony regarding their hours, and were entitled to a three year limitation period and liquidated damages, the full recovery for the collective for a three year limitation period, plus muidated damages, was approximately $1.5 million.[2]  Strauss Aff. ¶ 17. This number was only approximate because only 63 of 120 members of the collective (including Plaintiffs) provided statements regarding hours worked, and some were unsworn.  *Id.* Damages for the remaining 52 members of the collective were estimated. *Id.*   Defendants had no records regarding the hours worked by members of the collective, and the sworn statements, should they eventually be submitted, or live testimony, would be the only evidence from a which a fact finder could determine the hours worked. Strauss Aff. ¶ 11.

Once these calculations were made, the Parties engaged in extensive negotiations and eventually reached a settlement.  If the parties had not been able to settle amicably, the parties would have engaged in further discovery, conducted depositions, retained and deposed experts, and Defendants would have moved for decertification of the conditional collective action and

---

[2] This estimate takes into account that all members of the collective were paid wages below the federal minimum wage.  Therefore, the settlement is net of wages already paid.

summary judgment based on (1) the independent contractor status of the Plaintiff and (2) the Homeworker Exception, at significant cost to the Parties.

In addition to settling the collective, which consists of 105 members of the collective the ten Plaintiffs, Plaintiffs also agreed to settle the case with respect to the seventy-seven Medical Record Retrievers who live in the states of California, Connecticut, Illinois, Maine, New York, Ohio and Wisconsin and were engaged by Defendants during the applicable state law limitation period. Of those seventy-seven, twenty-six had already opted into the collective action, meaning that the addition of these classes brings the overall number of Medical Record Retrievers who will be paid from the settlement fund to 156, with class members from California, Maine and New York receiving damages based on the longer limitation periods for those states.[3]   Strauss Aff. ¶ 17.  Had defendants not agreed to a settlement class, those 51 Medical Record retrievers in the states of California, Connecticut, Illinois, Maine, New York, Ohio and Wisconsin who failed to opt-into the collective, or whose claims pre-dated the FLSA three year limitation period, would have been denied any recovery as numerosity issues would have prevented classes from being certified. Because of the uncertainty of Plaintiff's legal position, and the vagaries of trial, the Parties agreed to the settlement of $275,000 (the "Settlement Fund").

## ARGUMENT

### IV.   Plaintiffs Should be Permitted to File a Third Amended Complaint

As noted above, the original complaint filed in this matter included claims under the NYLL. ECF Dkt. No. 1. However, because there were no Plaintiffs from New York State at the time, Plaintiffs withdrew the NYLL claims at Defendants' request and filed an Amended

---

[3] CLL claims go back to September 9, 2009 (one year further back than the FLSA claims), and MMWS claims go back to September 9, 2007 (three years further back than the FLSA claims).  NYLL claims go back six years from the filing of the Third Amended Complaint, to June 1, 2009.

Complaint.  ECF Dkt. No. 24.  A copy of the Second Amended Complaint is annexed hereto to the Strauss Aff. as Exhibit C.

In connection with resolving this matter, Janice Bartoldus, a New York resident, retained Plaintiffs' counsel for purposes of bringing her NYLL claims on behalf of herself and a class of similarly situated New York Medical Record Retrievers, of which there are apparently nine, including Ms. Bartoldus.  Plaintiffs therefore respectfully request that the Court grant leave to file a Third Amended Complaint that includes the New York State class previously withdrawn.

**V.**     **The Court Should Appoint of Plaintiffs' Counsel as Class Counsel**

Plaintiffs' Counsel, Strauss Law PLLC should be appointed as Class Counsel because it meets all of the requirements of Federal Rule of Civil Procedure 23(g). *See Damassia v Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (explaining  that Rule 23(g) requires the court to consider "the work counsel has done in identifying  or  investigating  potential  claims  in  the action…counsel's  experience  in  handling class actions, other complex litigation, and claims of the type asserted in the action,…counsel's knowledge of applicable law, and…the resources counsel will commit to representing the class") (internal quotation marks omitted).

Strauss Law PLLC has substantial experience prosecuting large scale class actions, serving as the coordinating counsel for proposed class action lawsuits against 14 educational institutions in five different states.  Strauss Law PLLC is currently co-counsel on two proposed class actions, one pending in the District of New Jersey and the other pending in the Central District of Florida. Strauss Aff. ¶ 19.  In addition, Mr. Strauss regularly litigates highly complex commercial matters. Prior to opening Strauss Law PLLC, Jesse Strauss, the firm's principal, worked for a top securities class action firm, representing institutional investors and the classes they lead in multi-billion dollar investor class actions.  Strauss Aff. ¶ 20.  Prior to that, Mr. Strauss was a law clerk to the Honorable Dora Irizzary, a member of the bench of this district court. Id.  Mr. Strauss has been

selected as a  "Super Lawyer – Rising Star" by Thompson Reuters every year since 2013. Id.   Mr. Strauss regularly bills clients in excess of $400 per hour for their time.  Strauss Aff. ¶ 21.

## VI.    The Court Should Provisionally Approval the FLSA Settlement.

Plaintiffs request that the Court provisionally approve the settlement of their FLSA claims.   This matter was brought as a FLSA collective action, and the Court has already conditionally certified the FLSA collective.  ECF Dkt. Nos. 54-55.  Plaintiffs now request that the Court approve a settlement of the FLSA claims along with the settlement of the Class claims.[4]

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354. In this case, as noted above, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth on numerous contested issues.  Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## VII.    The Court Should Preliminarily Approval of the Class Action Settlement

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

---

[4] Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

settlements, particularly in the class action context"). Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing *Newberg* § 11.25). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to Class Members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the Class Members receive notice of the settlement. *Clark*, 2009 WL 6615729, at *3. The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, 12 (S.D.N.Y. July 27, 2007). Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of notice of settlement to all Class Members; and

3. A final settlement approval hearing at which Class Members may be heard, and at which argument concerning the fairness of the settlement may be presented.

13

*See* Fed. R. Civ. P. 23(e).  Plaintiffs request that the Court take the first step now – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, approving Plaintiffs' Proposed Notice, and authorizing Plaintiffs to send it.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.  Defendants will provide the names of all members of the FLSA collective who opted into the action as of August 30, 2014 ("Collective Members") and Class Members to the Claims Administrator within ten days of the Court granting Plaintiffs' Motion for Preliminary Approval of Settlement. Ex. A to the Strauss Aff. ("Settlement Agreement"), § 2(e).

2.  Notices to Class Members and Collective Members will be mailed within twenty-days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement. Settlement Agreement, § 2(e).

3.  Class Members will have 30 days after the Notice to opt out of the settlement or object to it ("Notice Period").  Collective Members will receive notice of the FLSA settlement, which is included in the Settlement Agreement. *Id.* § 2(f).

4.  A final fairness hearing will be held as soon as is convenient for the Court.  *Id.* Parties can file responses to any objections up to 14 days before the fairness hearing.  Plaintiffs will move for final approval of the settlement up to fourteen days before the final fairness hearing.

5.  No later than 10 days after the date of the Final Approval Order, Defendants shall deposit $275,000 into the fund managed by the settlement administrator. The Effective Date of the settlement will be 30 days after entry of the Court's Order Granting Final Approval or, in the event of an appeal after the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of final approval. *Id.* § 3(a).

6.  Payment will be made to all Collective Members and Class Members within (3) days of the Effective Date. 2(c).  Payment of all court ordered attorney fees, and costs, will also be paid at that time. Service Awards will also be paid at that time if the recipient has returned a supplemental release or ten days after receipt of the release 3(c).  Otherwise, Service Awards will be Paid three days after the Defendants receive the supplemental release.

The Settlement Fund: The Settlement Agreement creates a common fund of $275,000 (the "Fund"), §3(a), which covers Class Members' and Collective Members' awards, all attorneys' fees

14

and litigation costs that are awarded by the Court, and Court approved service payments to the Plaintiffs, without whom this settlement would not have been possible. *Id.* The Fund does not cover the costs of administering the Fund, which are to be borne by Defendants, alone. *Id.* The settlement covers the claims of all individuals who provided services as Medical Record Retrievers for Defendants from June 1, 2009 to June 1, 2015 in the State of New York, September 9, 2007 to September 9, 2013 for those located in Maine, September 9, 2009 to September 9, 2013 for those located in California, September 9, 2010 to September 9, 2013 for those located in Illinois and Ohio, and September 9, 2011 to September 9, 2013 for those located in Connecticut and Wisconsin. Settlement Agreement § 2.28. The Settlement also covers all Collective Members *Id.* The total number of Class Members and Collective Members is 150 in total.

Releases: Class Members who do not timely opt out release Defendants from all wage and hour claims under the NYLL, CLL, OMFWSA, MMWS, IMWL, and CMWA. Settlement Agreement § 4(a). Each Collective Member who affirmatively opted into the lawsuit by August 30, 2014 releases Defendants from all wage and hour claims under the FLSA by cashing the check. *Id.*

Allocation Formula: After the allocation of the Court-approved attorneys' fees, the Court-approved litigation costs, and service awards, the amount remaining from the Fund will be divided among Class Members and Collective Members based on an allocation formula. Each Class Member who does not opt out of the settlement, and Collective Member, will receive a proportional share of the Fund based on the number of weeks he or she worked as a Medical Record Retriever. Settlement Agreement § 3(d). To determine the proportional share, each Class Member and Collective Member will be assigned one point for each week worked for Defendants during the applicable class periods in their state, or, in the case of Collective Members, between September

15

9, 2010 and September 9, 2013.  *Id.* § 4.4(B)(1).  The Claims Administrator will then divide the total number of points for each Class Member and Collective Member by the total number of points for all Class Members to determine each Class Member's and Collective Member's portion of the Fund.  *Id.* § 4.4(B)(2).  The Claims Administrator will then multiply each Class Member's and Collective Member's portion of the Fund by the Fund to determine the amount to be paid to each Class Member and Collective Member.  *Id.* § 4.4(B)(3).

Any remaining amount after the Fund has been paid shall be redistributed among the Class Members and Collective Members who cashed their initial settlement checks, *pro rata*; or, if the amount remaining is too small to make redistribution practical, it will be distributed to a *cy pres* designee.  Ex A, Settlement Agreement § 3(a).  The Parties shall submit their proposed *cy pres* designees to the Court, and request that the Court determine the appropriate *cy pres* designee.  *Id.*

Attorneys' Fees, Litigation Costs, and Service Awards:  Plaintiffs' Counsel will apply for up to thirty-three and one third percent of the Fund as attorneys' fees.[5]   Settlement Agreement § 3(d).  In addition, Plaintiffs' Counsel will apply for reimbursement of reasonable litigation costs and expenses from the Fund. *Id.*  The Court need not decide attorneys' fees and costs now.  Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiff's counsel will subsequently file

---

[5] Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. Class Counsel stood to gain nothing in the event the case was unsuccessful.  Therefore, consistent with the Settlement Agreement, Plaintiffs' counsel will apply for reimbursement from the Settlement Fund for their litigation costs, and for attorney's fees equal to one-third of the Settlement Fund. Plaintiff has requested preliminary approval of Plaintiff's legal fees. Based on a Settlement Fund of $275,000, Plaintiff will be requesting attorney's fees of $91,657.50, plus expenses of $15,000. This is a typical fee award in the Second Circuit.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) ("Class and Plaintiff's Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotation marks and citation omitted); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) ("A fee of 33% of the Settlement Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotation marks and citation omitted).

a formal Motion for Approval of Attorneys' Fees and Reimbursement of Expenses at least 14 days prior to the final settlement approval hearing.

Plaintiffs will apply for service awards of for each Plaintiff in the following amounts: $2,000 to Sheri Brooking-Van Lone, $2,000 to Amy Cross, $15,000 to Dominica Zeller, $10,000 to Amy Stowe, $6,000 to Jane Pietkivitch, $5,000 to Shelia Murphy,  $10,000 to Tammy Meunier, $10,000 to Shari Merrill, $6,000 to Elena Carroll.  Settlement Agreement § 3(c).  Plaintiffs will not seek a service award for Ruby Owens and Janice Bartoldus due to their small contribution to this action. Strauss Aff. ¶ 22.  These service awards are provided in recognition of the extraordinary services provided by each Plaintiff, without whom no recovery would have been possible because Plaintiffs' counsel would not have had the information necessary to commence and litigate the matter. Strauss Aff. ¶ 22.  Plaintiffs have served the Class and the Collective well by assisting with the preparation of the complaint and the factual investigation of the claims and by shouldering the risks incurred as Plaintiffs. Plaintiffs' counsel was in constant communication with the Plaintiffs throughout the pre-litigation and litigation stages of this case. Plaintiffs spent an inordinate amount of time responding to Defendants' twenty-three interrogatories and thirty-eight document demands, and were also prepared to be deposed, if necessary.  Plaintiffs will file separate motions asking the Court to approve the service awards simultaneously with Plaintiffs' Motion for Final Approval of the Settlement, which will be no later than 14 days before the final settlement hearing.  In addition, Plaintiffs will be required to sign a separate release in consideration of the Service Awards payments.

Settlement Claims Administrator: Defendants' Counsel shall choose the Claims Administrator.  Settlement Agreement § 2.29.  The Claims Administrator's fees will be paid by

Defendants, separate from the Fund so as to preserve as much of the Fund as possible for the Class and the Collective.

The Settlement is Fair, Reasonable, and Adequate: In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").   All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

*Litigation through Trial Would be Complex, Costly, and Long (Grinnell Factor 1):* By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the class.  As noted above, at the time of settlement, the parties were engaging in discovery from all 105 Collective Members spread out in two dozen states and with varying levels of interest in this matter. Moreover, issues regarding the participation of Collective Members would continue to preoccupy the parties as Plaintiffs would insist in a sampling methodology for providing sworn testimony regarding hours worked, while Defendants would most likely demand sworn statements, if not trial testimony, from all 105 Collective Members.  In addition, there would be onerous additional document discovery from and regarding all 105 Collective Members. Each lead Plaintiff, alone, had approximately 12,000 pages of documents associated with them.  Moreover, even after discovery,  Plaintiffs would likely move for summary judgment, and Defendants would likely cross move for summary judgment on the defenses.  If the Court denied the motions, a fact-intensive trial would be necessary to determine liability and damages.   The trial would also be replete with major evidentiary issues, such as the types of proof that Defendants could offer to negate the inference that Plaintiffs' recollection of hours worked were accurate, and whether Plaintiffs would be able to offer evidence of changes in

the Medical Record Retriever program, or such evidence would be barred as a subsequent remedial measure.  A trial would be lengthy and consume tremendous time and resources. It is likely the losing party would appeal the judgment. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

*The Reaction of the Class Has Been Positive (Grinnell Factor 2)*: Although notice of the settlement has not yet issued to the class, the Plaintiffs have expressed their approval of the settlement.  Strauss Aff. ¶ 17. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object.

*Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3):* Although preparing this case through trial would require hundreds of hours of discovery for both sides, the Parties have completed enough discovery to recommend settlement. Plaintiffs have reviewed over 113,000 pages of documents, and Defendants have received hundreds of pages of documents, as well as responses to over three dozen interrogatories.   The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  Plaintiffs also performed detailed damages calculations based on the data that the Plaintiffs and half the members of the collective provided.  *Id*. ¶ 20.

*Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5):* Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969);

19

*see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). A trial on the merits would involve risks for Plaintiffs as to both liability and damages. For example, Plaintiffs would have to overcome Defendants' good faith defense, their defenses related to the independent contractor status of Plaintiffs and the application of the Homeworker Exception to FLSA. Moreover, even if these hurdles could be overcome, Plaintiff face an obstacle in establishing their hours worked, as few have records beyond their own recollections, which Defendants have indicated they intend to vigorously challenge. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. These factors therefore weigh in favor of approval.

*Maintaining the Class through Trial Would Not Be Simple (Grinnell Factor 6)*: Without a settlement, numerosity issues would have prevented any classes from being certified. In addition, Defendants would have moved for decertification of the collective due to differences between the Collective Members. The briefing would be extensive. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors preliminary approval.

*Defendants' Ability to Withstand a Greater Judgment (Grinnell Factor 7):* A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian and German Bank Holocaust Litig*., 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the financial condition of the Defendants is unclear. However, by requiring that the Fund be deposited with the Claims

Administrator after final approval of the settlement, Plaintiffs will not need to risk being unable to collect on the judgment.

*The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9):* Defendants have agreed to pay a substantial amount, $275,000.   This represents considerable value given the attendant risks of litigation and collection, even though recovery could be greater if Plaintiffs overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal. Here, based on Plaintiffs own calculations, this is about 20% of the highest possible recovery at trial. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for  Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million").   "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

**VIII.**   **Conditional Certification Of The Rule 23 Classes Is Appropriate**

Plaintiffs respectfully request that the Court conditionally certify the following Federal Rule of Civil Procedure 23 classes solely for purposes of effectuating the settlement in this action: Medical Records Retrievers engaged by Defendants in New York between June 1, 2009 and the date of final judgment in this matter (the "New York Class"); Medical Records Retrievers engaged by Defendants in California between September 9, 2009 and the date of final judgment in this

21

matter (the "California Class"); Medical Records Retrievers engaged by Defendants in Ohio between September 9, 2010 and the date of final judgment in this matter (the "Ohio Class"); Medical Records Retrievers engaged by Defendants in Maine between September 9, 2007 and the date of final judgment in this matter (the "Maine Class"); Medical Records Retrievers engaged by Defendants in Illinois between September 9, 2010 and the date of final judgment in this matter (the "Illinois Class"); Medical Records Retrievers engaged by Defendants in Connecticut [prior to the date of final judgment in this matter as the statute of limitations has been equitably tolled by Defendants' failure to properly put Plaintiff on notice as to her rights as an alleged employee and the fact that Plaintiff did not consult an attorney during the course of her alleged employment] (the "Connecticut Class"); and, Medical Records Retrievers engaged by Defendants between September 9, 2011 and the date of final judgment in this matter (the "Wisconsin Class") (collectively, the "Proposed Rule 23 Classes").  The Proposed Rule 23 Classes satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy of representation, and at least one of the subsections of Rule 23(b), and Defendants do not oppose such conditional certification solely for settlement purposes.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and, (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating

22

the controversy." *Id.* In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.   Numerosity

Upon information and belief, the Proposed Rule 23 Classes consist of seventy-seven members, which breaks down as follows:  New York (22); California Class (13); Illinois (21); Ohio (17); Maine (2); Wisconsin (1); and, Connecticut (1).

Courts have routinely approved settlements that involve fewer than 40 potential class members, finding that the numerosity requirement is not can be satisfied by means other than a simple headcount.  In *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005), for example, the court granted preliminary approval to a proposed class settlement involving overtime claims for 28 individuals.  On the issue of numerosity, the court explained:

> While a potential class of forty members is generally presumed sufficiently numerous, *see Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d at 483, a court evaluating the appropriateness of class certification must consider more than mere numbers alone.  *See Robidoux v. Celani,* 987 F.2d at 936. Rather, a determination of practicability should be based upon all the circumstances surrounding the case.  *Id.*  The court should consider such relevant factors as: "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits." *Id.* (citing 1 Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.06, at 143 (2d ed. 1985)).  *See also Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir.1967) (class of eighteen individuals found sufficiently numerous); *Grant v. Sullivan,* 131 F.R.D. 436, 446 (M.D. Pa. 1990) (certification of class may be proper even with class as small as fourteen members); *Meyer v. Stevenson, Bishop, McCredie, Inc.,* 1976 WL 788, *2 (S.D.N.Y. 1976)(certifying class of thirty individuals); *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.,* 43 F.R.D. 452 (E.D. Pa. 1968) (class of twenty-five individuals satisfied numerosity requirement).

*Id.* at 180-181.

23

In *Frank*, the court went on to conclude the numerosity element was satisfied because the likely recovery for each individual class member was low (under $1,000) and they would be unlikely to pursue individual claims. *Id.* at 181. Similarly, in *Gortat v. Capala Bros., Inc.,* 2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012), the Court noted that "[t]his Circuit has stressed . . . that determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. Accordingly, the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; [and,] (4) the ability of claimants to institute individual suits . . . ." *Id.* at *3 (citations omitted). *See also Odom v. Hazen Transport, Inc.,* 275 F.R.D. 400 (W.D.N.Y. 2011) (finding requirements for class certification, including numerosity, were satisfied for class of 16 truck drivers seeking unpaid wages).

Application of each of these factors weighs heavily in favor of certifying the Proposed Rule 23 Classes in this case. Settlement will be in the interests of judicial economy. The class members (who work out of their homes around the country) are widely dispersed geographically. They are unlikely to possess significant financial resources, or to have the ability to bring individual actions. Thus, the Court should find the numerosity requirement satisfied for purposes of conditionally certifying the Proposed Rule 23 Classes for purposes of settlement.

**B.    Commonality**

The Proposed Rule 23 Classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although "[t]he claims . . . need not be identical," they must share "common questions of fact or law." *Frank*, 228 F.R.D. at 181 (citing *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir.

24

1983)).  There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Even where class members do "not share exact experiences in terms of uncompensated or improperly compensated hours worked," if "the claims are based on similar allegations, which give rise to the same or similar legal arguments."  *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, *3 (S.D.N.Y. Apr. 16, 2012).

Here, the claims of the Proposed Rule 23 Classes involve numerous common issues.  Their allegations are identical, *i.e.*, that Defendants misclassified them as non-employees and failed to pay them minimum wages and overtime in violation of state wage and hour laws.  The evidence necessary to prove their claims, as well as the defenses against such claims, are identical. Accordingly, the commonality requirement is satisfied for the Proposed Rule 23 Classes.

### C.   <u>Typicality</u>

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182 (citation omitted). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d. Cir. 1997) (citation omitted).  "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

In this case, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Proposed Rule 23 Class members' claims.  Plaintiffs argue that Defendants classified Plaintiffs and Class Members as non-employees and failed to pay them minim wage and

25

overtime pursuant to the same company policies and practices.  Because Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the Proposed Rule 23 Class members' claims, Plaintiffs maintain that they satisfy the typicality requirement. *See Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, *3 (S.D.N.Y. June 20, 2014) (typicality satisfied where "[p]laintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of the [c]lass [m]embers' claims").

### D.   Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney*, 443 F.3d at 268).  Here, the Named Plaintiffs meet the adequacy requirement because there is no evidence that they have interests at odds with those of the Proposed Rule 23 Class members.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds); *see also Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, *3 (S.D.N.Y. July 31, 2014) (same); *Sewell*, 2012 WL 1320124, *4 (adequacy met where there was no evidence demonstrating any potential conflicts of interest between plaintiffs and class members).[6]

---

[6] For the reasons stated above, Class Counsel also meet the adequacy requirement of Rule 23(a)(4).  *See* pp. _-_, infra.

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). That Plaintiffs meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (citation omitted). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). Simply because a defense may arise and affect different class members differently does not defeat predominance. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check*, 280 F.3d at 138). Where plaintiffs are "unified by a common legal theory" and "common facts," predominance is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement is "designed to determine whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623) (internal quotation marks omitted).

Here, Plaintiffs and the Proposed Rule 23 Class members' common factual allegations and common legal theory – that Defendants violated federal and state wage and hour laws by misclassifying them as non-employees and failing to pay them minimum wages and overtime – predominate over any factual or legal variations among potential class members. *See Beckman*, 293 F.R.D. at 473 (finding plaintiffs' "common factual allegations and . . . common legal theory . . . predominate over any factual or legal variations among Class Members" in wage and hour misclassification case); *Sewell*, 2012 WL 1320124, at *5 (same).

## 2.   A Class Action is a Superior Mechanism for Settlement

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including:  the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; and, the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs and, upon information and belief, the Proposed Rule 23 Class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by the Proposed Rule 23 Class members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for putative class members, but will also "conserve judicial resources and preserve public confidence

in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Beckman*, 293 F.R.D. at 474; *see Sewell*, 2012 WL 1320124, at *5 (class adjudication will conserve resources); *Damassia*, 250 F.R.D. at 161, 164 (same). Accordingly, a class action is the most suitable mechanism to fairly, adequately and efficiently resolve Plaintiffs' and the Proposed Rule 23 Class members' claims.

## IX.    The Court Should Approve the Notice Plan and Distribution Process

The Proposed Notice, which is attached to the Strauss Affirmation as Exhibit B, complies with due process and Federal Rule of Civil Procedure 23.  Under Rule 23,  notice must provide: "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).  Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *3 (S.D.N.Y. May 17, 2011).

Here, the Proposed Notice satisfies each of these requirements.  The Notice also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. The Settlement Agreement provides that the Notices will be mailed by the Claims Administrator to the last known address of each Class Member and Collective Member within 20 days of preliminary

29

approval.  *Id.* § 3.4(B).  The Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing.  *Id.* § 3.4(D).  The Notice contains information about how to exclude oneself or object to the settlement.  Class Members will have 30 days from the date of mailing to submit opt-out requests or to comment on or object to the settlement.  *Id.* § 3.5.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) Permit Plaintiffs to file a Third Amended Complaint, adding a New York Class and a New York plaintiff, (2) Certify for settlement purposes the FLSA collective, which was conditionally certified on June 17, 2014 (ECF Dkt. No. 55); (3) Appoint Strauss Law PLLC class counsel; (4) Grant preliminary approval of the Settlement Agreement (5) Certify for settlement purposes the Settlement Classes consisting of all Medical Record Retrievers in the states of New York, California, Connecticut, Illinois, Maine, Ohio and Wisconsin; and, (5) Approve the Proposed Notice, attached as Exhibit B to the Strauss Affirmation.

Dated: New York, New York
         July 21, 2015

                                        /s/ J. Strauss_____
                                        Jesse Strauss (JS-0212)
                                        STRAUSS LAW PLLC
                                        305 Broadway, 7th Floor
                                        New York, NY 10007
                                        Phone: 212-822-1496
                                        Email: Jesse@strausslawpllc.com