UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOMINICA R. ZELLER, ELANA P. CARROLL, SHARI MERRILL, TAMMY MEUNIER, SHEILA F. MURPHY, SHERI BROOKING-VAN LONE, AMY CROSS, AMY STOWE. JANE PIETKIVITCH, RUBY OWENS, and JANICE BARTOLDUS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>PDC CORPORATION, d/b/a PDC OF NEW YORK, PARAMEDS.COM, INC., d/b/a PDC RETRIEVALS, and ELI ROWE,<br><br>Defendants. | Civ. No.: 1:13-cv-05035 (ARR) (JO)<br><br>**AFFIRMATION OF JESSE STRAUSS IN SUPPORT OF PLAINTIFFS' PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, FINAL APPROVAL OF THE SETTLEMENT OF THE FLSA COLLECTIVE CLAIMS, APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR APPROVAL OF SERVICE AWARDS TO NAMED PLAINTIFFS** |

Jesse Strauss, a member of this Honorable Court, Affirms as follows:

1.     Annexed hereto as Exhibit A is the settlement agreement between Plaintiffs Dominica R. Zeller, Elena P. Carroll, Shari Merrill, Tammy Meunier, Sheila F. Murphy, Sheri Brooking-Van Lone, Amy Cross, Amy Stowe, Jane Pietkivitch, Janice Bartoldus, Ruby Owens, ("Named Plaintiffs") the Collective and the Class, and Defendants PDC Corporation, d/b/a PDC of New York, Parameds.com, Inc., d/b/a PDC Retrievals, RES Service Corp. and Eli Rowe ("Defendants").

2.     Annexed hereto as Exhibit B is the Notice of Pendency of Class Action and Proposed Settlement to be sent to members of the Class.

Investigation

3.     From mid-July 2013 through the filing of the initial complaint in this matter, I worked extensively with Plaintiffs Dominica R. Zeller, Elena P. Carroll, Shari Merrill, Tammy

1

Meunier, Sheila F. Murphy, Sheri Brooking-Van Lone, Amy Cross, Amy Stowe, and Jane Pietkivitch ("Named Plaintiffs") to research and investigate their claims against Defendants. The investigation required me to learn how Defendants operated their work-from-home Medical Record Retriever program and research arcane areas of federal and state wage and hour law to identify violations. Despite having substantial experience in federal wage-and-hour law, Defendants program was unique and determining its legality required extensive work.

Pre-Certification of a Nationwide Collective

4. After filing the Complaint, my co-counsel and I moved promptly to conditionally certify the nationwide collective and send notice of the FLSA lawsuit. We did so because the Medical Record Retrievers who were to be members of the proposed collective were spread out around the nation, worked from home, and very few had any contact with other Medical Record Retrievers. We felt, therefore, that it was important for as many Medical Record Retrievers as possible to be aware of the matter. Additionally, it was unclear to us how many Medical Record Retrievers worked for Defendants. Estimates varied widely. It turned out that there were far fewer than we initially believed.

5. After the Court declined to authorize the sending of notice to the nationwide collective and required additional information, I worked extensively with the Named Plaintiffs to identify the hours they recalled working for Defendants. I also worked extensively with the Named Plaintiffs to determine the consistent aspects of their work to show they were subject to similar working conditions, regulations, and payment.

6. Within two weeks of the Court permitting notice of to be sent to members of the nationwide collective, my co-counsel, at the time, Maurice Painko arranged for it to be done.

Former Medical Record Retrievers were then notified of the lawsuit, and provided the option to become members of the collective.

7.     The last date for Medical Record Retrievers to become a member of the collective was August 30, 2014. By that date, there were 105 members of the collective. From that point forward, myself and co-counsel Maurine Painko represented 115 members of the collective, spread out in two dozen states around the nation. Mr. Painko and I regularly received calls from members of the collective seeking information regarding the matter.

8.     Upon reviewing the documents provided by the Named Plaintiffs and members of the collective, my co-counsel and I realized that we had failed to name RES Servicing Corp., and entity which had paid some of the Medical Record Retrievers for their work. In May 2014 we then moved to amend the Complaint to add RES Servicing Corp as a Defendants. That motion was granted.

Discovery

9.     Defendants served upon Named Plaintiffs twenty-three separate interrogatories to be responded to by each of the Named Plaintiffs and five members of the collective who had opted-in even before notice was sent. Defendants also served thirty-eight document demands upon each of the Named Plaintiffs and the five opt-ins. With the extensive assistance of the Named Plaintiffs, I timely responded to the interrogatories and document demands on May 19, 2014. I hired document review and compilation assistants to assist with the responses and document production. I did this because I believed it would be more cost effective to use hire document review and compilation assistants then to hire associates or paralegals for that purpose.

10.     I also served document demands and interrogatories on Defendants. While I expected a somewhat limited production, Defendants produced 113,727 pages of documents

responsive to Plaintiffs' First Request for the Production of Documents, not including a Microsoft excel database consisting of 689,461 rows, containing information regarding each transaction entered into Defendants' "Case Database" where Defendants tracked the status of the Named Plaintiffs' work. Importantly, these documents only related to the Named Plaintiffs. Apparently, each member of the collective also had thousands of pages of associated documents. Although we demanded records of the hours worked by Plaintiffs and members of the collective, Defendants claimed that none existed because Defendants did not track the hours worked by Medical Record Retrievers.

11.    I engaged in numerous meet and confers with defense counsel, preceded by lengthy letters regarding purported deficiencies in Defendants' and Plaintiffs' respective production. Several temporary attorneys were hired as document review and compilation assistants to review, log and do a preliminary analysis on the all 113,727 pages of documents. I analyzed the Case Database myself, as I deemed it the only record of the times in which the named Plaintiffs were working. In addition, I under took a secondary review of pertinent documents identified by the document review and compilation assistants.

12.    After the period for opting into the FLSA collective had ended, Defendants served a second set of twenty-five interrogatories upon each member of the collective. Defendants also served a second set of 41 document demands upon each member of the collective.

13.    In late September 2014, the parties decided that in light of the discovery already exchanged, the definite size of the collective, and the heavy burdens on the parties in responding to additional discovery, settlement negotiations were appropriate. As part of the negotiations, and to understand the amount of damages sought by the collective because no records from Defendants were provided, and to keep discovery going so as not to delay the case more than absolutely

necessary, I agreed to respond to Defendants' Second Set of Interrogatories. My co-counsel and I made a tremendous effort to get each member of the collective to provide verified responses to the interrogatories. Only 53 of the 105 members of the collective responses to our requests. Each of the Named Plaintiffs, except Janice Bartoldus, who was not yet a part of the claim, and Ruby Owens, who failed to provide responses, provided responses.

14.     It is unclear why members of the collective were reluctant to provide discovery. More than likely, they were not invested in the outcome of the case because they had only worked for Defendants for a short period. Many of the members of the collective worked for a very short time, while others worked for Defendants for less than 10 hours a week, and Defendants were among multiple other employers.

15.     We were unable to settle the matter at that time. After settlement negotiations ended, the parties re-commenced discovery in earnest. The Court required us to go back to the recalcitrant opt-ins to request additional information, which we did. Still, only a few additional members of the collective provided responses. At no time did the Court rule on whether "sampling" was appropriate, meaning that Plaintiffs would potentially be required to produce documents responsive to 41 different demands for each of the member of the collective, as well as respond to twenty-five interrogatories also on behalf of each member of the collective. We believed that sampling was appropriate for discovery but I believed that members of the collective would need to present some sworn testimony in written form for trial.   It was unclear how many members of the collective would be interested in doing so.

16.     Without deciding whether sampling was appropriate, but to move discovery along, the parties agreed that Plaintiffs would provide document discovery and interrogatories from 20 members of the collective selected by Defendants.   Plaintiffs also continued to demand a more

fulsome document production from Defendants, but Defendants claimed that many of the documents were inaccessible due to their arcane computer systems. The Court also allowed witnesses to be deposed in their homes, which would have required travel to 30 different deposition locations around the nation.

Settlement Negotiations

17.    Plaintiffs and Defendants both agreed that the trial on this matter would be long and complex.  Named Plaintiffs and members of the collective would be required to submit evidence of the hours they worked, and Defendants would likely be able to cross-examine them. In addition, Defendants intended to call witnesses, both expert and lay, who would testify that the amount of time required for each task was minimal, and that Named Plaintiffs and members of the collective were overstating the hours they worked.

18.    It was also unclear to me whether liquidated damages and the three-year limitation period would be appropriate.  Defendants had designed their program in a novel manner, and may have believed, in good faith, that the Medical Record Retrievers were independent contractors. In addition, a trial on the merits would involve risks for Plaintiffs as to both liability and damages. For example, Plaintiffs would have to overcome Defendants' good faith defense, their defenses related to the independent contractor status of Plaintiffs and the application of the Homeworker Exception to FLSA. Moreover, even if these hurdles could be overcome, Plaintiff face an obstacle in establishing their hours worked, as few have records beyond their own recollections, which Defendants have indicated they intend to vigorously challenge.  Many of the Class Members worked other jobs while working for Defendants, further complicating a recollection and making it likely that testimony regarding hours worked could be impeached.  Accordingly, the outcome of

the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.

19.     In January 2015, Defendants offered to settle the case, and Plaintiffs rejected the offer. Based on Plaintiffs' calculations, maximum damages if the case went to trial was $1.5 million plus attorney fees, assuming full participation by the opt-in Plaintiffs, liquidated damages and a three-year limitation period, none of which was assured.  This calculation was arrived at after a detailed damages calculations based on the data that the Plaintiffs and half the members of the collective provided.  After several weeks of back and forth and heated negotiations, including two in person meetings, one where Defendant Eli Rowe was present, the parties reached an agreement to settle the matter for $275,000, inclusive of incentive awards, legal fees and costs, but exclusive of the costs of administering the settlement.  As reflected in the Settlement Agreement, we also agreed to settle the matter on behalf of classes in California, Connecticut, Illinois, Maine, New York, Ohio and Wisconsin, which adds approximately 31 additional Medical Record Retrievers from those states who are not members of the collective but will now recover some wages from Defendants.  The named Plaintiffs have approved the settlement.

Class Notice

20.     After the Court approved the settlement, I filed an Unopposed Motion to Certify The FLSA Collective, Unopposed Motion to Approve the Class Action Settlement, Unopposed Motion to Certify the Settlement Classes, Unopposed Motion to Appoint Strauss Law PLLC as Class Counsel, and Unopposed Motion to Approve the Proposed Notice of Settlement. The motion was granted and the Court issued a Preliminary Approval Order granting plaintiffs' motion to file a Third Amended Complaint; appointing Strauss Law PLLC as class counsel; provisionally approving the settlement of plaintiffs' FLSA collective claims; preliminarily approving the class

action settlement; conditionally certifying classes under the State Laws; and approved the notice of proposed settlement of class and collective action lawsuit and fairness hearing, and the distribution process. The motion was granted.  ECF Dkt. No. 118.  In granting the motion, the Court further scheduled a final fairness hearing for July 13, 2016 and permitted plaintiffs to respond to any objections to the settlement and petition the court for attorneys' fees and costs as well as service awards, which was required to be included in the motion for final approval of the settlement, by June 29, 2016. *Id.*

     21.    The class action administrator, Dahl Administration ("Dahl") was selected by Defendants, as per the Settlement Agreement.  Dahl was provided a list of Class Members on April 5, 2016 which included Class Members' name, last known address, last known email address, Social Security Number and number of weeks worked during the class period.  Affidavit of Kelly Kratz Regarding Notice and Settlement Administrative Activities Completed as of June 13, 2016 ("Kratz Aff."), which is annexed hereto as Exhibit C, ¶4.  Dahl then obtained the most current address of Class Members from the United States Postal Service and mailed settlement packets to all 169 class and Collective Members by May 23, 2016.  *Id.* ¶ 5. 19 of the packets mailed on May 23, 2016 were undeliverable as of June 13, 2016 and Dahl tracked the Class Member whose packets were returned using Experian, a national credit reporting service.  *Id.* ¶ 7. An updated address for one Class Member could not be located. *Id.* After remailing to six Class Members who requested it, and the 18 for whom updated address were found, upon information and belief, only one of the 169 class and Collective Members have not received notice.  *Id.*

     22.    No members of the State Law Classes opted out of the settlement.  *Id.* ¶ 10. One Class Member objected not to the settlement formula or the amount of payment, but only that she was not given credit for every week worked.  *Id.* ¶ 11; A copy of the objection is annexed hereto

8

as Exhibit D. Dahl was asked to obtain additional information regarding the dates that the sole objecting Class Member worked, but was provided no follow up information from the Class Member. Defendants have stated to me that they have no reason to believe that their records of the weeks the sole objecting Class Member worked is incorrect.

23.    Dahl sent notices to Federal and state authorities as required by the Class Action Fairness Act ("CAFA") on July 30, 2015. The 90-day CAFA notice period concluded on October 28, 2015.

24.    The settlement terms are set forth in the Settlement Agreement, which is annexed hereto as Exhibit A. They are also summarized on pages 10-12 of the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Classes, Final Approval of the Class Action Settlement, Final Approval of the Settlement of the FLSA Collective Claims, Approval of Attorneys' Fees and Reimbursement of Expenses, and for Approval of Service Awards to Named Plaintiffs. I believe the settlement is fair and appropriate under the circumstances and believe my co-counsel and I worked hard to achieve a desirable result.

<u>Request for Fees and Payment of Expenses</u>

25.    I am the founder and principal of Strauss Law, PLLC, which I founded in January 2011. Strauss Law specializes in plaintiff side wage and hour litigation. I also maintain an active commercial litigation practice and real estate practice. I received a juris doctorate from Brooklyn Law School in 2003, with honors. Since then, I have worked at two nationally recognized law firms, and clerked for a Federal District Court judge in the Eastern District of New York. I am admitted to the New York State bar, the Eastern District of New York, the Southern District of New York, the District Court for the District of Columbia, the Second Circuit Court of Appeals,

and the Sixth Circuit Court of Appeals. I am a member in good standing at each of these courts. In addition, I have appeared *pro-hoc vice* in Courts around the nation.

26.     As the principal of Strauss Law PLLC, I have substantial experience producing large scale class actions, serving as the coordinating counsel for proposed class action lawsuits against 14 educational institutions in five different states in 2011 to 2012, and am co-counsel on a proposed class action pending in the District of New Jersey.

27.     Prior to opening Strauss Law PLLC I was an associate with Labaton Sucharow LLP from 2007 to 2010, a top securities class action firm, representing institutional investors and the classes they lead in multi-billion-dollar investor class actions. Prior to that, I worked as an associate at the national law firm of Blank Rome LLP, from 2003 to 2006. From 2006 to 2007 I was a law clerk to the Honorable Dora Irizarry, the Chief Judge of this district. *Id.* I have been selected as a "Super Lawyer – Rising Star" by Thompson Reuters every year since 2013. *Id.*

28.     Strauss Law PLLC has been actively bringing collective actions for violations of FLSA against employers who fail to pay their interns. In settling these cases, I regularly receive fees in excess of $400 per hour for my work.

29.     In connection with my work, I regularly read litigate related to employment law, to remain up to date on the latest legal developments.

30.     Since July 2013, I have spent 379.35 attorney hours litigating and settling this litigation. Attached as Exhibit E are my full contemporaneous billing records for this matter reflecting every hour spent on the matter from July 2013 to June 28, 2016. I also worked with two temporary document review and compilation assistants who collectively spent 300 hours on the matter. Time sheets for the document compilation and review assistants are annexed hereto as Exhibit F.

31.     The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by me.

32.     As of June 28, 2016, the total lodestar on the case was $128,385.43. The Settlement Agreement, annexed hereto as Exhibit A, limits the amount of fees I can request to $91,657.50, which is less than my lodestar and, for that reason has no multiplier.  Moreover, the lodestar itself was arrived at using the billable rate of $275 per hour for me, $50 per hour for Penina Radinsky, and $110 for Zachary Weinstock, which is below what partners at wage and hour law firms charge. I have been practicing law for twelve years, Mr. Weinstock is a recently licenced lawyer, and Ms. Radinsky is a recent law school graduate who was not yet licensed. The lower fee is provided because I am committed to preserving as much of the fund as possible for the Plaintiffs and the Class. I made the decision to hire temporary document review and compilation assistants to assist with document review and responses to interrogatories to also minimize bills.  I was also as efficient as possible with my hours worked. I fully expect to spend additional time, not counted toward my lodestar, including preparing for and attending the final fairness hearing, answering class member questions, answering questions from the claims administrator, and negotiating possible disagreements with Defendants about administering the settlement and distributing the fund.

33.     My intention to request fees up to 33.33% of the Settlement Fund was disclosed to Class and Collective Notice (Exhibit B) and no Class or Collective Member objected to the fees.

34.     I am also requesting t payment of $1,936.52 in expenses to be paid from the Fund. The expenses are as follow (1) $623.94 for the production of documents and electronically stored information by US Legal Support, invoice N3406082 (Exh. G); (2) $1,135.96 for Evolve

Discovery for access to a Relativity database, invoice 2000003095 (Exh. H); (3) $176.62 for Metro Attorney Services, Inc. for service of process on Defendants, invoice 6627 (Exh. I).

35.     Mr. Weinstock and Ms. Radinsky were employed on a project basis, with one working exclusively from January 26, 2015 to February 18, 2015 and the other working from September 9, 2014 to February 18, 2015. *See* Exh. F. The assistance provided was essential to being able to reach a fair settlement of the matter because the document review and complication assistants obtained interrogatory responses from willing Collective Members and reviewed the 113,000 pages of documents produced by Defendants. I did a secondary review of pertinent documents identified by the assistants.

Service Awards

36.     Plaintiffs are also applying for service awards of for each Plaintiff in the following amounts: $2,000 to Sheri Brooking-Van Lone, $2,000 to Amy Cross, $15,000 to Dominica Zeller, $10,000 to Amy Stowe, $6,000 to Jane Pietkivitch, $5,000 to Shelia Murphy, $10,000 to Tammy Meunier. $10,000 to Shari Merrill, $6,000 to Elena Carroll. Settlement Agreement, Exhibit B, § 3(c). These amounts were also disclosed in the Class Notice, and no Class Member or Collective Member objected. These service awards are provided in recognition of the extraordinary services provided by each Plaintiff, without whom no recovery would have been possible because Plaintiffs' counsel would not have had the information necessary to commence and litigate the matter. Plaintiffs will not seek a service award for Ruby Owens and Janice Bartoldus due to their small contribution.

37.     Named Plaintiffs Sheri Brooking-Van Lone, Amy Cross, Dominica Zeller, Amy Stowe, Jane Pietkivitch, Shelia Murphy, Tammy Meunier, Shari Merrill, and Elena Carroll have made important contributions to the prosecution and fair resolution of this action on behalf of Class

Members.  They assisted me investigation and prosecution of the claims by providing detailed factual information regarding their job duties and those of other Class Members, the wages they were paid, the hours that they worked, and other information relevant to their claims. Throughout the litigation, the Named Plaintiffs regularly communicated with me and assisted with the preparation and review of the Complaint.  Each Named Plaintiff was also subject to extensive discovery, including thirty-eight document demands and was required to respond to twenty-three interrogatories in May 2014.  The Named Plaintiffs undertook extensive searches for documents and responded to each interrogatory. The Named Plaintiffs were also involved in the settlement negotiations, including discussing and approving appropriate terms.

38.    The Court-approved Notices that were sent to Class Members and Collective Members stated the service awards that the Named Plaintiffs request:  $2,000 to Sheri Brooking-Van Lone, $2,000 to Amy Cross, $15,000 to Dominica Zeller, $10,000 to Amy Stowe, $6,000 to Jane Pietkivitch, $5,000 to Shelia Murphy, $10,000 to Tammy Meunier, $10,000 to Shari Merrill, $6,000 to Elena Carroll. A (Settlement Agreement § 3(c)); Exh B (Class Notice, § 19).  No Class Member has objected to the requested service awards.

Jesse Strauss