UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOMINICA R. ZELLER, ELANA P. CARROLL, SHARI MERRILL, TAMMY MEUNIER, SHEILA F. MURPHY, SHERI BROOKING-VAN LONE, AMY CROSS, AMY STOWE, JANE PIETKIVITCH, RUBY OWENS, and JANICE BARTOLDUS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>     -against-<br><br>PDC CORPORATION, d/b/a PDC OF NEW YORK, PARAMEDS.COM, INC., d/b/a PDC RETRIEVALS, and ELI ROWE,<br><br>Defendants. | Civ. No.: 1:13-cv-05035 (ARR) (JO) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, FINAL APPROVAL OF THE SETTLEMENT OF THE FLSA COLLECTIVE CLAIMS, APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR APPROVAL OF SERVICE AWARDS TO NAMED PLAINTIFFS**

STRAUSS LAW PLLC
305 Broadway, 7th Floor
New York, NY 10007
Phone: 212-822-1496
Email: Jesse@strausslawpllc.com

June 29, 2016

TABLE OF CONTENTS

I.      PROCEDURAL AND FACTUAL HISTORY ................................................ 1

II.     CLASS NOTICE ............................................................................. 8

III.    CAFA NOTICE ............................................................................. 9

IV.     SUMMARY OF THE SETTLEMENT TERMS ........................................ 10

        A.      The Settlement Fund: ........................................................10

        B.      Releases: ......................................................................10

        C.      Allocation Formula: ........................................................10

        D.      Attorneys' Fees, Litigation Costs, and Service Awards .....................11

        E.      Settlement Claims Administrator: ...........................................12

IV.     THE COURT SHOULD APPROVE THE FLSA SETTLEMENT. ................ 13

V.      THE COURT SHOULD APPROVAL OF THE CLASS ACTION SETTLEMENT...... 14

        A.      Rule 23(a).......................................................................14

                1.      Numerosity:..........................................................15

                2.      Commonality: .......................................................15

                3.      Typicality: ...........................................................16

                4.      Adequacy of the Named Plaintiffs:.............................17

        B.      Rule 23(b) .....................................................................17

                1.      Common Questions Predominate: ..............................18

                2.      A Class Action is a Superior Mechanism for Settlement: ........................19

                3.      The proposed settlement is Fair, Reasonable, and Adequate and
                        Should be Approved in All Respects:......................................20

VI.     THE COURT SHOULD APPROVE ATTORNEYS' FEES AND PAYMENT OF
        EXPENSES............................................................................. 26

        A.      Class Counsel is Entitled to Attorneys' Fees Equal to its Loadstar Through
                June 28, 2016 of $128,385.43, With no Multiplier, Reduced to $91,657.50 as per
                the Settlement Agreement:..................................................26

                1.      Reasonable Hourly Rate: ........................................30

i

    B.     A fee of $91,657.50 (or the actual lodestar without a multiplier as of June 18, 2016 of $.................................................................................32

    C.     Class Counsel Are Entitled to a Reasonable Fee of 33 ⅓ Percent of the Settlement Fund: ............................................................................38

    C.     Class Counsel Are Entitled to Payment of Expenses Under the Settlement Agreement..............................................................................39

VII.    THE COURT SHOULD APPROVE SERVICE AWARDS FOR THE NAMED PLAINTIFFS IN THE AMOUNTS SET FORTH IN THE SETTLEMENT AGREEMENT AND THE CLASS NOTICE............................................................................................ 40

    A.     The Requested Service Awards Are Reasonable and Should Be Approved: ........41

    2.     The Named Plaintiffs Expended Significant Time and Effort:..................44

    3.     The Ultimate Recovery Supports the Requested Service Awards.............45

VIII.    CONCLUSION.................................................................................................................. 46

## I.     PROCEDURAL AND FACTUAL HISTORY

After ten weeks of extensive investigation and correspondence between Plaintiffs and their counsel, On September 9, 2013, a Class and Collective Action Complaint was filed against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA"), New York State Labor Law ("NYLL"), California Labor Law ("CLL"), the Ohio Minimum Fair Wage Standards Act, ("OMFWSA"), the Maine Minimum Wages Statute ("MMWS"), the Illinois Minimum Wage Law, ("IMWL"), the Connecticut Minimum Wage Act ("CMWA"), Wisconsin Minimum Wage Law ("WIMWL") (the NYLL, CLL, OMFWSA, MMWS, IMWL, and CMWA are collectively referred to as "State Laws"). Plaintiffs alleged that they and similarly situated Medical Record Retrievers – workers who call medical facilities to obtain records for insurance companies allowing insurance companies to assess risk or adjudicate claims – were not properly paid the minimum wage, overtime, paid for all the hours worked, paid spread of hours compensation, and were not provided proper notifications as required by Federal law and applicable state law.

In November 2013, instead of an answer, Defendants requested permission to move to dismiss Defendant Eli Rowe from the action, and to dismiss the claims under the NYLL because there was no plaintiff who worked in New York, despite the fact that Defendants are New York businesses and Mr. Rowe resides in New York.  Plaintiffs requested permission to cross-move to toll the limitation period for Plaintiffs' FLSA claims and for conditional certification of a nationwide FLSA collective.  See ECF Dkt. Nos. 11 and 19.  On December 13, 2013, after a conference with the Court, Plaintiffs agreed to file an Amended Complaint withdrawing the NYLL allegations.  The Amended Complaint was filed on December 16, 2013.  ECF Dkt. No. 24.  Shortly

1

thereafter, Defendants advised the Court that they would not be making a motion to dismiss Mr. Rowe.  ECF Dkt. No. 25.   Defendants answered on January 2, 2014.  ECF Dkt. No. 30.

In letter briefs in December 2013, Defendants opposed the conditional certification of the nationwide collective and dissemination of notice.  In addition, although the Court directed the parties to agree on the wording on the proposed notice of conditional certification of the nationwide collective so that notice could be sent shortly after a decision on Plaintiffs' request, the parties failed to reach an agreement with respect to the wording of the proposed notice.  ECF. Dkt. No. 27.

On March 19, 2014, the Honorable James Orenstein declined to permit Plaintiffs to disseminate the proposed notice to the nationwide collective but allowed for the submission of additional evidence. ECF Dkt. No. 38.  In the interest of judicial economy, Judge Orenstein resolved the disputes regarding the wording of the proposed notice to be sent.  *Id.*  The Court also So Ordered the parties' joint proposed scheduling order.  ECF Dkt. No. 39.

After extensive conversations between Plaintiffs and counsel, and review of and collection of documents from Plaintiffs by counsel, on April 18, 2014 Plaintiffs filed eight additional affidavits in support of conditional certification of a nationwide collective and dissemination of notice of the FLSA collective action.  Strauss Affirmation in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Classes, Final Approval of the Class Action Settlement, Final Approval of the Settlement of the FLSA Collective Claims, Approval of Attorneys' Fees and Reimbursement of Expenses, and for Approval of Service Awards to Named Plaintiffs ("Strauss Aff.") ¶ 5, ECF Dkt. Nos. 41-49.  Defendants filed a memorandum of law in opposition to Plaintiffs' renewed motion on May 16, 2014.  ECF Dkt. No. 50.  Plaintiffs submitted their reply memorandum of law on May 30, 2014.  On June 17, 2014, the Court granted Plaintiffs' motion to

conditionally certify a nationwide collective and disseminate the notice previously ordered by the Court.  ECF Dkt. Nos. 54-55.  After some wrangling regarding the scope of the information members of nationwide conditional collective that Defendants were required to provide, as well as the timing of the production of the information, during the week of June 30, 2014 notice of the collective action was sent to Medial Record Retrievers, nationwide, who had worked for Defendants from September 9, 2010 to September 9, 2013.  Strauss Aff. ¶ 6.  The notice required that any member of the conditional collective who wished to affirmatively opt-in do so within sixty days of the postmark.  ECF Dkt. No. 55.  Based on the dates that the collective notices were postmarked, the last date by which a member of the collective could opt in was August 30, 2014. Strauss Aff. ¶ 7.  By that date, 105 members of the collective had opted in to the action. Strauss Aff. ¶ 7.  The total number of members of the collective is 115, which includes the ten Plaintiffs. *Id.*

After a review of the numerous documents provided by Plaintiffs, Plaintiff's counsel requested permission for leave to file a Second Amended Complaint adding RES Servicing Corp. as a Defendant.  ECF Dkt. No. 51.  RES Servicing Corp. had been omitted from the Complaint and the Amended Complaint because of a lack of understanding of its relationship with Defendants.  Strauss Aff. ¶ 8. Defendants opposed the request.  ECF Dkt. No. 53.  The Court then So Ordered a briefing schedule, and Plaintiff submitted a motion to amend. Defendants submitted an opposition, and Plaintiffs submitted a reply. ECF Dkt. Nos. 81-83.  On March 17, 2015, the Court granted Plaintiffs' motion to amend.  ECF Dkt. No. 101.

Pursuant to the joint scheduling order So Ordered by the Court, the parties had been propounding discovery on each other starting in March 2014, with responses due in May 2014. Defendants served upon Plaintiffs twenty-three separate interrogatories to be responded to by each

of the ten Plaintiffs and five members of the collective who had opted-in even before notice was sent. Strauss Aff. ¶ 9.   Defendants also served thirty-eight document demands upon each of the ten Plaintiffs and the five opt-ins.   *Id.*   Plaintiffs timely responded to the interrogatories and document demands on May 19, 2014.  *Id.*

Also in March 2014 Plaintiffs served upon Defendants document demands and interrogatories.  Strauss Aff. ¶ 10.   Defendants timely responded to both and, in early July 2014, began producing responsive documents.  *Id.* Defendants ultimately produced 113,727 pages of documents responsive to Plaintiffs' First Request for the Production of Documents, not including a Microsoft excel database consisting of 689,461 rows, containing information regarding each transaction entered into Defendants' "Case Database," the database where Defendants tracked the status of the 10 Plaintiffs' work.  *Id.* Defendants, however, maintained that they did not track the hours in which Plaintiffs were working because, as independent contractors, Plaintiffs were permitted to work at any time they wished, so long as the task was timely completed.  *Id.*   All discovery was exchanged pursuant to a So Ordered Confidentiality Agreement and Protective Order.  ECF Dkt. No. 57.  During the summer of 2014, the parties engaged in numerous meet and confer sessions to address alleged deficiencies in the productions.  Strauss Aff. ¶ 11.   Plaintiffs reviewed, logged and categorized all 113,727 pages of documents, and analyzed, in detail, the Case Database.  Strauss Aff. ¶ 11.  Counsel hired document review assistants to undertake the review of the 113,727 pages of documents produced by Defendants.  Strauss Aff. ¶ 11.  After the period for opting into the FLSA collective had ended, Defendants served a second set of twenty-five interrogatories upon each of the 105 members of the collective.  Strauss Aff. ¶ 12.  Defendants also served a second set of 41 document demands upon each of the 105 members of the collective. Strauss Aff. ¶ 12.

In late September 2014, the parties decided that, in light of the discovery already exchanged, the definite size of the collective, and the heavy burdens on the parties in responding to additional discovery, settlement negotiations were appropriate. Strauss Aff. ¶ 13; ECF Dkt. No. 92.  At the joint request of the parties, the Court adjusted the discovery deadlines to accommodate settlement negotiations.  ECF Dkt. No. 92.  As part of the settlement negotiations, and to meet the Court's deadlines in the event that a settlement could not be consummated, Plaintiffs agreed to respond to Defendants' Second Set of Interrogatories, but not Defendants' Second Set of Document Demands.  Strauss Aff. ¶ 13.  Despite herculean efforts to obtain responses from each member of the collective, Plaintiffs were ultimately only able to obtain verified interrogatory responses demands from 53 of the members of the collective and most of the ten Plaintiffs. *Id.*

The parties failed to reach a settlement and full discovery resumed in November 2014. Strauss Aff. ¶ 15. Several of the discovery disputes that had been unresolved prior to settlement negotiations, as well as other disputes which had arisen since, were briefed in December 2014 and brought to the Court on January 14, 2015. Strauss Aff. ¶ 15.  The Court resolved the disputes and permitted Defendants to take the depositions of the ten Plaintiffs and ten of the members of the collective, to be selected by Defendants.  ECF Dkt. No. 99.  Depositions were to be taken at a location convenient to the witness.  *Id.* In addition, the Court required Plaintiffs to respond to several of the interrogatories that Plaintiff had objected to and respond to Defendants' Second Request of the Production of Documents.  Strauss Aff. ¶ 15.  The Court did not rule on whether "sampling" was appropriate, meaning that Plaintiffs would potentially be required to produce documents responsive to forty-one different demands for each of the 105 members of the collective who had not previously responded, as well as respond to twenty-five interrogatories also on behalf each of the 105 members of the collective who had not previously responded.  *Id.* Without deciding

whether sampling was appropriate, but to move discovery along, the parties agreed that Plaintiffs would provide document discovery and interrogatories from twenty of the opt-ins plaintiffs of their choosing.  Strauss Aff. ¶ 16.  Defendants, however, maintained that they were entitled to document discovery and interrogatory responses from all 105 members of the collective, and would move to dismiss those members of the collective who declined to provide discovery.  Strauss Aff. ¶ 16.

After 105 plaintiffs opted in to the matter, Plaintiffs determined that, assuming each opt-in was able to come forward with sworn testimony regarding their hours, and were entitled to a three-year limitation period and liquidated damages, the full recovery for the collective for a three-year limitation period, plus liquidated damages, was approximately $1.5 million.[1]  Strauss Aff. ¶ 19. This number was only approximate because only 63 of 120 members of the collective (including Plaintiffs) provided statements regarding hours worked, and some were unsworn.  *Id.* Damages for the remaining 52 members of the collective were estimated.  *Id.*   Defendants had no records regarding the hours worked by members of the collective, and the sworn statements, should they eventually be submitted, or live testimony, would be the only evidence from a which a fact finder could determine the hours worked. Strauss Aff. ¶ 11.

In January 2015, Defendants communicated an offer to settle the case.  Strauss Aff. ¶ 15. The settlement offer was rejected by Plaintiffs.  *Id.* However, the parties entered into settlement discussions in earnest.  *Id.* After several weeks of back and forth, and heated negotiations including two in person meetings, one where Defendant Eli Rowe was present, the parties reached an agreement to settle the matter for $275,000, inclusive of Service Awards, legal fees and costs, but exclusive of the costs of administering the settlement.  Strauss Aff. ¶ 19.  In addition to settling

---

[1] This estimate takes into account that all members of the collective were paid wages below the federal minimum wage.  Therefore, the settlement is net of wages already paid.

the collective, which consists of 105 members of the collective and the ten Plaintiffs, Plaintiffs also agreed to settle the case with respect to Medical Record Retrievers who live in the states of California, Connecticut, Illinois, Maine, New York, Ohio and Wisconsin and were engaged by Defendants during the applicable state law limitation period.  The addition of these classes brings the overall number of Medical Record Retrievers who will be paid from the Settlement Fund to 169,[2] with Class Members from California, Maine and New York receiving damages based on the longer limitation periods for those states.[3]    Strauss Aff. ¶ 19.  Had defendants not agreed to a settlement class, Medical Record retrievers in the states of California, Connecticut, Illinois, Maine, New York, Ohio and Wisconsin who failed to opt-into the collective, or whose claims pre-dated the FLSA three-year limitation period, would have been denied any recovery as numerosity issues would have prevented classes from being certified.  Because of the uncertainty of Plaintiff's legal position, and the vagaries of trial, the Parties agreed to the settlement of $275,000 (the "Settlement Fund").

On July 21, 2015, Plaintiffs filed an Unopposed Motion to Certify The FLSA Collective, Unopposed Motion to Approve the Class Action Settlement, Unopposed Motion to Certify the Settlement Classes, Unopposed Motion to Appoint Strauss Law PLLC as Class Counsel, and Unopposed Motion to Approve the Proposed Notice of Settlement.  ECF Dkt. No. 102 ("July 21, 2015 Motion").  The July 21, 2015 Motion included the fully executed settlement agreement between the parties, described below. ECF Dkt. No. 103. A 30-page memorandum of law

---

[2] Based on data provided by Defendants, the correct number of Class Members and Collective Members is 169, and not 156, as was reported in the July 21, 2015 Motion.

[3] CLL claims go back to September 9, 2009 (one year further back than the FLSA claims), and MMWS claims go back to September 9, 2007 (three years further back than the FLSA claims). NYLL claims go back six years from the filing of the Third Amended Complaint, to June 1, 2009.

supported the motion.  ECF Dkt. No. 102-6.  The July 21, 2015 Motion also included a request to file a Third Amended Complaint, which was necessary to add a New York State lead plaintiff for purposes of certifying a New York State class, as noted above.  ECF Dkt. No. 102-6.  The matter was referred by the Honorable Allyne R. Ross to the Honorable Magistrate James Orenstein on July 31, 2015. On January 28, 2016 Magistrate Orenstein issued a Report and Recommendation recommending that the July 21, 2015 Motion be granted in all respects. ECF Dkt. No. 108. The Report and Recommendation was adopted by Judge Ross on February 25, 2016.  ECF Dkt. No. 109.

On March 4, 2016, the parties consented to the jurisdiction of Magistrate Orenstein for all purposes.  ECF Dkt. No. 111.  The Court subsequently held a conference with the parties and issued a Preliminary Approval Order granting plaintiffs' motion to file a Third Amended Complaint; appointing Strauss Law PLLC as class counsel; provisionally approving the settlement of plaintiffs' FLSA collective claims; preliminarily approving the class action settlement; conditionally certifying classes under the State Laws; and approved the notice of proposed settlement of class and collective action lawsuit and fairness hearing, and the distribution process. ECF Dkt. No. 118.  The Court further scheduled a final fairness hearing for July 13, 2016 and permitted plaintiffs to respond to any objections to the settlement and petition the court for attorneys' fees and costs as well as service awards, which was required to be included in the motion for final approval of the settlement, by June 29, 2016. *Id.*

## II.    Class Notice

The class action administrator, Dahl Administration ("Dahl") was provided a list of Class Members on April 5, 2016 which included Class Members' name, last known address, last known

email address, Social Security Number and number of weeks worked during the class period. Affidavit of Kelly Kratz Regarding Notice and Settlement Administrative Activities Completed as of June 13, 2016 ("Kratz Aff."), ¶4.  Dahl then obtained the most current address of Class Members from the United States Postal Service and mailed settlement packets to all 169 class and Collective Members by May 23, 2016.  *Id.* ¶ 5. 19 of the packets mailed on May 23, 2016 were undeliverable as of June 13, 2016 and Dahl tracked the Class Member whose packets were returned using Experian, a national credit reporting service.  *Id.* ¶ 7. An updated address for one Class Member could not be located. *Id.* After remailing to six Class Members who requested it, and the 18 for whom updated address were found, upon information and belief, only one of the 169 class and Collective Members have not received notice.  *Id.*

No members of the State Law Classes opted out of the settlement.  *Id.* ¶ 10. One Class Member objected not to the settlement formula or the amount of payment, but only that she was not given credit for every week worked.  *Id.* ¶ 11; Strauss Aff. ¶ 21.  A copy of the objection is annexed to the Strauss Aff. as Exhibit D. Dahl was asked to obtain additional information regarding the dates that the sole objecting Class Member worked, but was provided no follow up information from the Class Member.  Strauss Aff. ¶ 21.  Defendants have stated that they have no reason to believe that their records of the weeks the sole objecting Class Member worked is incorrect.  Strauss Aff. ¶ 21.  The objection should be overruled.

## III.   CAFA Notice

Dahl sent notices to Federal and state authorities as required by the Class Action Fairness Act ("CAFA") on July 30, 2015. *See* 28 U.S.C. § 1715(d); Strauss Aff. ¶ 22. The 90-day CAFA notice period concluded on October 28, 2015. Strauss Aff. ¶ 22.

### IV.    Summary of the Settlement Terms

**A.    The Settlement Fund:** The Settlement Agreement, annexed to the Strauss Aff. as Exh. A ("Settlement Agreement"), creates a Settlement Fund of $275,000 (the "Fund" of "Settlement Fund"), §3(a), which covers Class Members' and Collective Members' awards, all attorneys' fees and litigation costs that are awarded by the Court, and Court approved service payments to the Plaintiffs, without whom this settlement would not have been possible. *Id.* The Fund does not cover the costs of administering the Fund, which are to be borne by Defendants, alone. *Id.* The settlement covers the claims of all individuals who provided services as Medical Record Retrievers for Defendants from June 1, 2009 to June 1, 2015 in the State of New York, September 9, 2007 to September 9, 2013 for those located in Maine, September 9, 2009 to September 9, 2013 for those located in California, September 9, 2010 to September 9, 2013 for those located in Illinois and Ohio, and September 9, 2011 to September 9, 2013 for those located in Connecticut and Wisconsin.  Settlement Agreement § 2.28.  The Settlement also covers all Collective Members *Id.*  The total number of Class Members and Collective Members is 150 in total.

**B.    Releases:**  Class Members who do not timely opt out release Defendants from all wage and hour claims under the NYLL, CLL, OMFWSA, MMWS, IMWL, and CMWA. Settlement Agreement § 4(a).  Each Collective Member who affirmatively opted into the lawsuit by August 30, 2014 releases Defendants from all wage and hour claims under the FLSA by cashing the check. *Id.*

**C.    Allocation Formula:** After the allocation of the Court-approved attorneys' fees, the Court-approved litigation costs, and service awards, the amount remaining from the Fund will be divided among Class Members and Collective Members based on an allocation formula. Each

Class Member who does not opt out of the settlement, and Collective Member, will receive a proportional share of the Fund based on the number of weeks he or she worked as a Medical Record Retriever. Settlement Agreement § 3(d). To determine the proportional share, each Class Member and Collective Member will be assigned one point for each week worked for Defendants during the applicable class periods in their state, or, in the case of Collective Members, between September 9, 2010 and September 9, 2013. Id. § 4.4(B)(1).  The Claims Administrator will then divide the total number of points for each Class Member and Collective Member by the total number of points for all Class Members to determine each Class Member's and Collective Member's portion of the Fund. Id. § 4.4(B)(2). The Claims Administrator will then multiply each Class Member's and Collective Member's portion of the Fund by the Fund to determine the amount to be paid to each Class Member and Collective Member. Id. § 4.4(B)(3).  Any remaining amount after the Fund has been paid shall be redistributed among the Class Members and Collective Members who cashed their initial settlement checks, pro rata; or, if the amount remaining is too small to make redistribution practical, it will be distributed to a cy pres designee. Ex A, Settlement Agreement § 3(a). The Parties shall submit their proposed cy pres designees to the Court, and request that the Court determine the appropriate cy pres designee. *Id.*

     **D.**    **Attorneys' Fees, Litigation Costs, and Service Awards**:  As further set forth below, Plaintiffs' Counsel is applying for attorney's fees of $91,657.50, which is less than Plaintiffs' Counsel's actual loadstar of $128,385.43 as of June 28, 2016 at the rate of $275 per hour for attorney Jesse Strauss, –  a rate below what many practitioners charge – and without a multiplier.  Strauss Aff. ¶ 32.  In addition, 300 hours of document review and compilation were undertaken by a paralegal at the rate of $50 per hour and an attorney at the rate of $110 per hour.  As set forth below, if the Plaintiff's counsel alternatively moves for a fee equal to $91,657.50, or thirty-three and one-third

percent of the $275,000 Settlement Fund as attorneys' fees.  The full $91,657.50 in attorney fees

amount was disclosed in the Class Notice and to which no Class or Collective Member objected.

Strauss Aff. ¶ 33. Whether the lodestar or percentage of fund method is used, counsel seeks

reimbursement of $1,936.52 in costs.  Strauss Aff. Exhs. G,H, and I.  Plaintiffs are also applying

for service awards of for each Plaintiff in the following amounts: $2,000 to Sheri Brooking-Van Lone,

$2,000 to Amy Cross, $15,000 to Dominica Zeller, $10,000 to Amy Stowe, $6,000 to Jane Pietkivitch,

$5,000 to Shelia Murphy, $10,000 to Tammy Meunier, $10,000 to Shari Merrill, $6,000 to Elena

Carroll.  Settlement Agreement § 3(c).  These amounts were also disclosed in the Class Notice,

and no Class Member or Collective Member objected.   Strauss Aff. ¶ 34.  Plaintiffs will not seek

a service award for Ruby Owens and Janice Bartoldus due to their small contribution to this action.

Strauss Aff. ¶ 34.  These service awards are provided in recognition of the extraordinary services

provided by each Plaintiff, without whom no recovery would have been possible because

Plaintiffs' counsel would not have had the information necessary to commence and litigate the

matter. Strauss Aff. ¶ 34.  Plaintiffs have served the Class and the Collective well by assisting with

the preparation of the complaint and the factual investigation of the claims and by shouldering the

risks incurred as Plaintiffs. Plaintiffs' counsel was in constant communication with the Plaintiffs

throughout the pre-litigation and litigation stages of this case. Plaintiffs spent an inordinate

amount of time responding to Defendants' twenty-three interrogatories and thirty-eight

document demands, and were also prepared to be deposed, if necessary.  As set forth below, the

Court should approve these awards.

     **E.**    **Settlement Claims Administrator:** Defendants' Counsel retained Dahl Admiration

("Dahl") to administer the settlement as per Settlement Agreement § 2.29. Strauss Aff. ¶ 21. On April

21,2016, Dahl mailed the Court-approved Notice to 169 Class and Collective Members whose

names and addresses were provided by Defendants. Kratz Aff. ¶ 6.  These individuals were given

the opportunity to exclude themselves from, or object to, the settlement. *Id.* After the Notices were

mailed, Dahl received 18 Notices returned as undeliverable by the Post Office without updated

addresses. *Id.* ¶7. No new addresses were found for one Class Member. *Id.*  Notices were re-mailed

to Class Members for whom new addresses were located. *Id.* The Notice advised Class Members,

among other things, that they could object to or exclude themselves from the settlement. Strauss

Aff. Exh. Ex. B (Class and Collective Notice). No Class Member has opted out of the settlement.

Kratz Aff. ¶ 10.  One Class Member objected to the number of hours she was credited for, but not

the terms of the settlement.  *Id.* ¶ 11.

## IV.    The Court should approve the FLSA Settlement.

Plaintiffs request that the Court approve the settlement of their FLSA claims.  Unlike

the procedure under Rule 23, Collective Members must affirmatively opt into the litigation in

order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y.

2001).  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not

prevent them from bringing their own suits at a later date," FLSA collective actions do not

implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*,

747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc.*

*v. Sperling*, 493 U.S. 165 (1989).

Accordingly, there is a lower standard for the approval of the FLSA Settlement than for

the class settlement, discussed below.  Courts approve FLSA settlements when they are reached

as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v.*

*United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  Typically, courts regard the adversarial

nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.

*Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354. In this case the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth on numerous contested issues. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## V.      The Court Should Approval of the Class Action Settlement

When faced with a proposed class action settlement, courts first examine whether the class can be certified under Federal Rule of Civil Procedure 23 ("Rule 23"). *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). On April 1, 2016 the Court preliminarily certified State Law classes. Plaintiffs respectfully submit that the Court should now grant final certification because the settlement meets all of the requirements of Rule 23.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that "questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 23(b)(3). Each of these factors are addressed below, starting with the Rule 23(a) factors and continuing with the Rule 23(b)(3) factors.

### A.      Rule 23(a)

14

1.      *Numerosity:* Upon information and belief, the Proposed Rule 23 Classes consist of members in the following states:  New York (22); California (13); Illinois (21); Ohio (17); Maine (2); Wisconsin (1); and, Connecticut (1). Courts have routinely approved settlements that involve fewer than 40 potential Class Members, finding that the numerosity requirement is not can be satisfied by means other than a simple headcount.  In *Gortat v. Capala Bros., Inc.*, 2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012), the Court noted that "[t]his Circuit has stressed . . . that determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.  Accordingly, the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) geographic dispersion of Class Members; (3) financial resources of Class Members; [and,] (4) the ability of claimants to institute individual suits . . . ." *Id.* at *3 (citations omitted).  *See also Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011) (finding requirements for class certification, including numerosity, were satisfied for class of 16 truck drivers seeking unpaid wages).

Application of each of these factors weighs heavily in favor of certifying the Rule 23 Classes in this case.  Settlement will be in the interests of judicial economy.  The Class Members (who work out of their homes around the country) are widely dispersed geographically.  They are unlikely to possess significant financial resources, or to have the ability to bring individual actions. Thus, the Court should find the numerosity requirement satisfied.

2.      *Commonality:* The Rule 23 Classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the Class Members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although "[t]he claims . . . need not be identical," they must share "common questions of fact or

law." *Frank*, 228 F.R.D. at 181 (citing *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983)).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Even where Class Members do "not share exact experiences in terms of uncompensated or improperly compensated hours worked," if "the claims are based on similar allegations, which give rise to the same or similar legal arguments."  *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, *3 (S.D.N.Y. Apr. 16, 2012).

Here, the claims of the Rule 23 Classes involve numerous common issues.  Their allegations are identical, *i.e.*, that Defendants misclassified them as non-employees and failed to pay them minimum wages and overtime in violation of state wage and hour laws.  The evidence necessary to prove their claims, as well as the defenses against such claims, are identical.  Accordingly, the commonality requirement is satisfied for the Proposed Rule 23 Classes.

3.      *Typicality:* Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all Class Members."  *Frank*, 228 F.R.D. at 182 (citation omitted).  Typicality is satisfied "when each Class Member's claim arises from the same course of events, and each Class Member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d. Cir. 1997) (citation omitted).  "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

16

In this case, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiffs argue that Defendants classified Class Members as non-employees and failed to pay them minim wage and overtime pursuant to the same company policies and practices. Because Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the Proposed Rule 23 Class Members' claims, Plaintiffs satisfy the typicality requirement. *See Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, *3 (S.D.N.Y. June 20, 2014) (typicality satisfied where "[p]laintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of the [c]lass [m]embers' claims").

        *4.    Adequacy of the Named Plaintiffs:* Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other Class Members.'" *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney*, 443 F.3d at 268). Here, the Named Plaintiffs meet the adequacy requirement because there is no evidence that they have interests at odds with those of the Rule 23 Class Members. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013) (adequacy met where there was no evidence that named plaintiffs' and Class Members' interests were at odds); *see also Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, *3 (S.D.N.Y. July 31, 2014) (same); *Sewell*, 2012 WL 1320124, *4 (adequacy met where there was no evidence demonstrating any potential conflicts of interest between plaintiffs and Class Members).

    **B.    Rule 23(b)**

17

In addition to meeting the requirement of Rule 23(a), the class must also meet the requirements of Rule 23(b)(3). That rule requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). That Plaintiffs meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

      1.    *Common Questions Predominate:* To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (citation omitted). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). Simply because a defense may arise and affect different Class Members differently does not defeat predominance. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check*, 280 F.3d at 138). Where plaintiffs are "unified by a common legal theory" and "common facts," predominance is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement is "designed to determine whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623) (internal quotation marks omitted).

Here, Plaintiffs and the Proposed Rule 23 Class Members' common factual allegations and common legal theory – that Defendants violated federal and state wage and hour laws by misclassifying them as non-employees and failing to pay them minimum wages and overtime – predominate over any factual or legal variations among potential Class Members. *See Beckman*, 293 F.R.D. at 473 (finding plaintiffs' "common factual allegations and . . . common legal theory . . . predominate over any factual or legal variations among Class Members" in wage and hour misclassification case); *Sewell*, 2012 WL 1320124, at *5 (same)

2.     *A Class Action is a Superior Mechanism for Settlement:* The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); see also *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including:  the Class Members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against Class Members; and, the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs and, upon information and belief, the Rule 23 Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by the Proposed Rule 23 Class Members arising from the same

19

allegations.  Employing the class device here will not only achieve economies of scale for Class

Members, but will also "conserve judicial resources and preserve public confidence in the integrity

of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent

adjudications."  *Beckman*, 293 F.R.D. at 474; *see Sewell*, 2012 WL 1320124, at *5 (class

adjudication will conserve resources); *Damassia*, 250 F.R.D. at 161, 164 (same).  Accordingly, a

class action is the most suitable mechanism to fairly, adequately and efficiently resolve Plaintiffs'

and the Proposed Rule 23 Class Members' claims.

> 3.    *The proposed settlement is Fair, Reasonable, and Adequate and Should be*

*Approved in All Respects:* Rule 23(e) requires court approval for a class action settlement to insure

that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). To

determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche*

*Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts evaluate whether

the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City*

*of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*

*Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000). In *Grinnell*, the Second Circuit

provided the analytical framework for evaluating the substantive fairness of a class action

settlement. 495 F.2d at 448. The *Grinnell* factors guide district courts in making this determination.

They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the

class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class

action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the

range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the

range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

a.     **Litigation through Trial Would be Complex, Costly, and Long (Grinnell Factor 1):** By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the class. As noted above, at the time of settlement, the parties were engaging in discovery from all 105 Collective Members spread out in two dozen states and with varying levels of interest in this matter. Moreover, issues regarding the participation of Collective Members would continue to preoccupy the parties as Plaintiffs would insist in a sampling methodology for providing sworn testimony regarding hours worked, while Defendants would most likely demand sworn statements, if not trial testimony, from all 105 Collective Members.  In addition, there would be onerous additional document discovery from and regarding all 105 Collective Members. Each lead Plaintiff, alone, had approximately 12,000 pages of documents associated with them.  Moreover, even after discovery, Plaintiffs would likely move for summary judgment, and Defendants would likely cross move for summary judgment on the defenses. If the Court denied the motions, a fact-intensive trial would be necessary to determine liability and damages.  The trial would also be replete with major evidentiary issues, such as the types of proof that Defendants could offer to negate the inference that Plaintiffs' recollection of hours worked were accurate, and whether Plaintiffs would be able to offer evidence of changes in the Medical Record Retriever program, or such evidence would be barred as a subsequent remedial measure.  A trial would be lengthy and consume tremendous time and resources. It is likely the losing party would appeal the judgment. The settlement, on the other hand, makes monetary relief

21

available to Class Members in a prompt and efficient manner. Therefore, the first Grinnell factor weighs in favor of approval.

      b.    **The Reaction of the Class Has Been Positive (Grinnell Factor 2):** Plaintiffs have expressed their approval of the settlement by not objecting to the terms of the settlement . Strauss Aff. ¶ 22. Of the 169 class and Collective Members, only one has objected – and that objection was simply to the number of weeks the member was credited with, not about the amount of the settlement or the allocation formula. Strauss Aff. ¶ 22. This favorable response demonstrates that the class approves of the settlement, which further supports final approval. *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 Class Members objected and two requested exclusion); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (approving settlement where no Class Members objected and two opted out); *see also Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("that the vast majority of Class Members neither objected nor opted out is a strong indication" of fairness).

      With respect to the sole objector, she believes that Defendants did not properly record the weeks she worked, and she should be credited with additional weeks. Strauss Aff. ¶ 22. Dahl asked the objector for additional information to support her claims that she worked weeks she was not given credit for, and the objector provided no additional information. *Id.* Defendants have no reason to believe the objector worked more weeks than which she was credited. *Id.*

      c.    **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3):** Although preparing this case through trial would require hundreds of hours of discovery for both sides, the Parties have completed enough discovery to recommend settlement. Plaintiffs have reviewed over 113,000 pages of documents, and

22

Defendants have received hundreds of pages of documents, as well as responses to over three dozen interrogatories. Strauss Aff. ¶¶ 12-13. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004). Plaintiffs also performed detailed damages calculations based on the data that the Plaintiffs and half the members of the collective provided. Strauss Aff. ¶ 19. As set forth above, before a settlement agreement could be reached, Class Counsel rejected a settlement offer and settlement was only reached after innumerable telephone calls and two in person settlement conferences between counsel, one of which Eli Rowe, the CEO of Defendant was present.  Strauss Aff. ¶ 17-19. During those settlement conferences, the parties engaged in vigorous exchange regarding their respective claims and defenses. *Id.*

        d. **Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5):** Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  A trial on the merits would involve risks for Plaintiffs as to both liability and damages.  For example, Plaintiffs would have to overcome Defendants' good faith defense, their defenses related to the independent contractor status of Plaintiffs and the application of the Homeworker Exception to FLSA.  Strauss Aff. ¶ 18. Moreover, even if these hurdles could be overcome, Plaintiff face an obstacle in establishing their hours worked, as few have records beyond their own recollections, which Defendants have indicated they intend to vigorously challenge. Many of the Class Members worked other jobs while working for Defendants, further complicating

a recollection and making it likely that testimony regarding hours worked could be impeached. *Id.* Accordingly, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. These factors therefore weigh in favor of approval.

e.    **Maintaining the Class through Trial Would Not Be Simple (Grinnell Factor 6):** Without a settlement, numerosity issues would have prevented any classes from being certified. In addition, Defendants would have moved for decertification of the collective due to differences between the Collective Members and the numerosity issues.   The briefing would be extensive.  If a class were to be certified, Defendants would likely seek permission to file an interlocutory appeal under Rule 23(f). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay.  This factor also favors preliminary approval.

f.    **Defendants' Ability to Withstand a Greater Judgment (Grinnell Factor 7):** A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the financial condition of the Defendants is unclear.  However, by requiring that the Settlement Fund be deposited with the Claims Administrator after final approval of the settlement, Plaintiffs will not need to risk being unable to collect on the judgment.

g.    **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9):** Defendants have agreed to pay a substantial amount, $275,000.  This represents considerable value given the attendant risks of litigation and collection, even though recovery could be greater if Plaintiffs overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived

an appeal. Here, based on Plaintiffs own calculations, this is about 20% of the highest possible recovery at trial. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million"). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

4.      *The Proposed Settlement Is Procedurally Fair:* The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010) (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*,

2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Here, the settlement was reached after Class Counsel evaluated the claims and defenses, and after extensive arm's-length negotiations between the Parties. Strauss Aff. ¶¶ 17-19; The Parties had numerous telephone conferences and attended two in person settlement conferences. *Id.* In preparation for the settlement discussions, Class Counsel outlined Defendants' vulnerabilities and acknowledging the risks faced by the Class and Collective and estimated damages for the class and collective. Strauss Aff. ¶ 18; *Yuzary v. HSBC Bank USA, N.A.*, 2013 US Dist. LEXIS 144327, *5 (S.D.N.Y. Oct. 2, 2013) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where the parties conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations).

**VI.     The Court Should Approve Attorneys' Fees and Payment of Expenses.**

**A.      Class Counsel is Entitled to Attorneys' Fees Equal to its Loadstar Through June 28, 2016 of $128,385.43, With no Multiplier, Reduced to $91,657.50 as per the Settlement Agreement:** A court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 487 (E.D.N.Y. 2002) ("There are two methods by which the district court may calculate reasonable attorneys' fees in class action cases, the lodestar method and the percentage method."). Under the percentage-of-fund method, class counsel is awarded a reasonable percentage of the Settlement Fund. *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Regardless of whether fees are calculated pursuant to the percentage-of-fund method or lodestar method, "the fees awarded in Settlement Fund cases may not exceed what is reasonable under the circumstances." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388

(S.D.N.Y. 2013). Courts consider the following factors enumerated in Goldberger in evaluating the reasonableness of an attorneys' fee award: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

Traditionally in the Second Circuit district courts used the percentage-of-settlement method and cross checked it by determining whether the percentage provided is a fair "multiplier" of the actual lodestar. However, recent decisions have called this practice into question. *See Fujiwara v. Sushi Yasuda Ltd*., 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) (holding that that there are reasons to be "wary" of the percentage-of-fund method in FLSA cases and choosing to analyze the reasonableness of class counsels' fee application pursuant to the lodestar method and the Goldberger factors); *see also Hall v. Prosource Techs., LLC*, 2016 US Dist. LEXIS 53791, at *36-37 (E.D.N.Y. Apr. 11, 2016) (adopting *Fujiwara* and considering the percentage of settlement method "in conjunction with an analysis of the reasonableness of Class and Collective Counsel's application pursuant to the lodestar method and the *Goldberger* factors").   Recent cases in the Eastern District and the Southern District have used the lodestar method exclusively, determining that it "accurately identifies the proper, reasonable amount of compensation to the attorneys. *Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*, 2015 US Dist. LEXIS 125869, at *16-17 (E.D.N.Y. Sep. 21, 2015); *Mills v. Capital One*, 2015 US Dist. LEXIS 133530, at *24-25 (S.D.N.Y. Sep. 30, 2015); *Lizondro-Garcia v. Kefi LLC*, 2015 US Dist. LEXIS 85873, at *12 (S.D.N.Y. July 1, 2015).

 Both the Supreme Court and the Second Circuit have held that "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a

'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). A lodestar is often "multiplied" upwards when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010). Here, as noted above, no multiplier is requested.

To determine the reasonableness of the requested fee under the lodestar method, the Court first examine the reasonable rate in this district and the reasonable hours spent on a matter of this complexity. After those factors are established, the Court may examine the traditional *Goldberger* factors to determine the reasonableness of the fee request. Although here counsel agreed to only seek 33.33% of the fund, to the extent that counsel's lodestar exceeds 33.33% of the Settlement Fund, the Court can still approve the lodestar without a reduction to conform to the settlement agreement. *See Gay v. Tri-Wire Eng'g Solutions, Inc.*, 2014 US Dist. LEXIS 232, at *34-36 (E.D.N.Y. Jan. 2, 2014). In *Gay*, this Court permitted a lodestar award equal to 35.3% of the Settlement Fund because "a slightly higher percentage than the traditional one-third contingency reward, an examination of the submitted billing records, a cross-check under the lodestar method, and the fact that the attorney's fee award was negotiated separately from the settlement award for Class Members, together prompt the court to find that the requested amount of attorney's fees is fair and reasonable." Here, Counsel's actual lodestar at the reasonable rate of $275 per hour for

partner time, $110 for associate time, and $50 for paralegal time,[4] is as of June 28, 2016, is $128,385.43 is 46.7% of the Settlement Fund.  Strauss Aff. ¶ 32. Although Class Counsel is requesting $91,657.50, or 33.33% of the Settlement Fund, the Court may award the higher amount to compensate counsel for every hour worked.

As set forth below, under the Goldberger factors, Class Counsel's request to be awarded the reasonable hourly rate of $275 per hour for each of the 379.35 hours that Plaintiff counsel worked, as well as the 150 hours billed by the associate, and the 150 hours billed by the paralegal, for a total fee of $128,385.43 reduced to $91,657.50 to conform to the 33.33% of the Settlement Fund agreed to in the Settlement Agreement, is a reasonable amount of time to address claims of this complexity and should be approved by the Court.  *See Bodon v. Domino's Pizza,* LLC, 2015 US Dist. LEXIS 82039, at *22-24 (E.D.N.Y. June 4, 2015) (holding that to apply the lodestar method the court must "determine a reasonable hourly rate for the legal services performed, using factors such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney. . . . and once the Court determines the reasonable hourly rate, it must then multiply this rate by the reasonable number of hours expended, in order to determine the presumptively reasonable fee").

As set forth below, $275 per hour is well below the rate typically provided to partners at wage and hour practices, and is sought because of Mr. Strauss's commitment to preserving as much of the fund as possible for Plaintiffs and the Class.  Strauss Aff. ¶32.   Counsel employed temporary document review and compilation assistants to assist with the review of documents and

---

[4] The associate and document reviewers were hired on a project basis to complete document review and compilation. Counsel determined to hire them to minimize fees. The tasks completed

responses to Defendants document demands and interrogatories in an attempt to keep fees to a minimum. Strauss Aff. ¶ 32.  Mr. Strauss only spent his time, billed at $275 per hour, on tasks that needed to be performed by an attorney while the balance of the hours were billed by the document review assistants at a rate of $110 and $50 per hour, respectively. *Id.*     Mr. Strauss and the document review and compilation assistants were as efficient as possible with his hours worked. *Id.* No multiplier of the loadstar is sought: Mr. Strauss is only requesting payment for every hour worked at a reasonable hourly rate, reduced to conform to the Settlement Agreement.  Strauss Aff. ¶ 32. Contemporaneous time sheets, listing hours worked from July 2013 to present are annexed to the Strauss Aff. as Exhibit E.  Time records for the document review assistants are annexed hereto as Exhibit F.

       *1.     Reasonable Hourly Rate:* Mr. Strauss hourly rate of $275 is reasonable for this matter.  Mr. Strauss is a 2003 law school graduate who has owned and operated his own firm since January 2011 – five and one half years. Strauss Aff. ¶ 25.  The requested per hour fee of $275 per hour reflects Mr. Strauss's commitment to the well-being of the Class and the cost effective provision of quality legal services. The requested fee of $110 for Zachary Weinstock, Esq, a first year associate and $50 per hour for Penina Radinsky, a law school graduate not yet licensed to practice law, are also reasonable.  Both Mr. Strauss, Mr. Weinstock and Ms. Radinsky worked at hourly rates l below what other wage and hour practitioners apply for and receive in this district. *See Hall v. Prosource Techs.*, *LLC,* 2016 US Dist. LEXIS 53791, at *38 (E.D.N.Y. Apr. 11, 2016) (noting that "courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partner" and "given [counsel's] capable representation and favorable result achieved in this action, the Court will apply an hourly rate of $450 [for counsel] in calculating the lodestar; see also  *Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp.

3d 290 (E.D.N.Y. 2015) (awarding $350 for a senior partner, $200 for junior partners and associates, and $75 for paralegals); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 U.S. Dist. LEXIS 43326, *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates); *Tacuri v. Nithin Constr. Co.*, 2015 U.S. Dist. LEXIS 21918, *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400 and for senior associates range from $200 to $300); *Lema v. Mugs Ale House Bar*, 2014 U.S. Dist. LEXIS 41286, *6 (E.D.N.Y. Mar. 21, 2014) (awarding rates of $300 to $350 for partners, $125 to $225 for associates, and $75 for paralegals); *Fawzy v. Gendy,* 2013 U.S. Dist. LEXIS 144323, *1 (E.D.N.Y. Oct. 6, 2013) (hourly rates range from $200 to $350 for partners, $200 to $250 for senior associates, $100 [24] to $150 for junior associates, and $70 to $80 for legal assistants); *Jean v. Auto & Tire Spot Corp.*, 2013 U.S. Dist. LEXIS 74570, 2013 WL 2322834, at *6 (E.D.N.Y. May 28, 2013) (rates for "attorneys handling FLSA cases . . . usually range from $300 to $400"). Accordingly, Mr. Strauss's request for $275 per hour is reasonable.

          2.    *Counsel Worked a Reasonable Number of Hours*: As of June 28, 2016, Mr. Strauss has worked 379.35 hours on this matter. Strauss Aff. Exh. E.  Mr. Strauss supports the number of hours worked with contemporaneous time records accounting for every hour worked since July 1, 2013, when Mr. Strauss first began investigating these claims.  Strauss Aff. ¶ 30.  Mr. Weinstock and Ms. Radinsky collectively worked 300 hours on the matter.  Their time sheets are annexed to the Strauss Aff. as Exh. F. The contemporaneous time records submitted provide sufficient information to assess the reasonableness of the fee application. *See Perdue v. City Univ. of New York*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998) (requiring that time entries identify the "general subject matter of time expenditures") (internal quotation omitted). To the extent that Mr.

31

Strauss's time entries are billed in blocks, that is "reasonable because they are not vague and generally combine related tasks." *Lizondro-Garcia v. Kefi LLC*, 2015 US Dist. LEXIS 85873, at *21-22 (S.D.N.Y. July 1, 2015) (approving a fee award despite the use of block billing). Block-billing is "not prohibited in this Circuit as long as the Court can determine the reasonableness of the work performed." *Zimmerman v. Portfolio Recovery Assocs., LLC*, 2013 U.S. Dist. LEXIS 174182, *11 (S.D.N.Y. Dec. 12, 2013); *Abdell v. City of New York*, 2015 U.S. Dist. LEXIS 25510 (S.D.N.Y. Mar. 2, 2015) (determining that block-billed entries were not unreasonable because they were "temporally short entries combining related tasks" and there was "little difficulty understanding" them).

B.      *A fee of $91,657.50 (or the actual lodestar without a multiplier as of June 18, 2016 of $128,385.43) is reasonable under the Goldberger factors:* To evaluate the reasonableness of Mr. Strauss's per hour fee and of the amount of hours worked for purposes of determining the overall reasonableness of the fee request, the Court should apply the six factors set forth in *Goldberger:* (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

1.      **Class Counsel's Time and Labor**: Class Counsel spent significant effort to achieve the $275,000 settlement, litigating this matter beginning with interviewing plaintiffs in July 2013 and determining the varsity of their claims in light of the homeworker exemption and other potential barriers to recovery and concluding, almost three years later, with this motion seeking final approval of the settlement and payment to class and Collective Members.  From July 2013 to present, Mr. Strauss spent 379.35 hours on this matter. Strauss Aff. ¶ 30, Exhibit E.

Document review work and compilation of documents was completed by the document review and compilation assistants hired by counsel, who billed 300 hours on the matter. Strauss Aff. ¶ 30. The time records of the document review and compilation assistants are annexed to the Strauss Aff. as Exhibit F. Mr. Strauss only did a secondary review of pertinent documents and time supervising and finalizing interrogatory responses. *Id.*

The attorney time billed by Mr. Strauss is reasonable for a case like this one and were compiled from contemporaneous time records maintained by Mr. Strauss. Strauss Aff. ¶ 31. Moreover, the requested fee is not based solely on time and effort already expended. Rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. Strauss Aff. ¶ 32; *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering Class Member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund").

**2.** **Magnitude and Complexity of the Litigation:** The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996) (citation omitted). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). It should also be noted that was a "hybrid" case, consisting of claims brought under both FLSA and states law – in ten different states. "Among FLSA cases, the most complex

33

type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b)." *Johnson*, 2011 WL 4357376, at *17.

As noted above, this case hinged on several mixed questions of fact and law. In particular, the parties disputed whether the work-from-home medical record retrievers were exempt from FLSA under the Homeworker Exemption, and if, in light of their autonomy, the fact that they used their own equipment and worked when they wished, the Class Members were properly classified as independent contractors, as Defendants asserted.  Resolving these issues required extensive legal and factual research, which Mr. Strauss did on a purely contingent basis.  These mixed factual and legal questions, and the time and effort spent to attempt to resolve them, support approval of Class Counsel's attorneys' fee request. *See Sewell*, 2012 WL 1320124, at *11-12; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing 40 percent of the Settlement Fund).

**3.** **Risk of Litigation:** The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470-71 (2d Cir. 1974), *abrogated b Goldberger*, 209 F.3d at 49.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and

34

resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful. *Sewell,* 2012 US Dist. LEXIS 53556 at *11 ("Courts have recognized that wage and hour cases involve complex legal issues") Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs' minimum wage claim hinged on their ability to prove that they were employees, and not independent contractors. Plaintiffs would also have to overcome the defense that they were exempt from the FLSA under the Home Worker exemption, that they were properly classified as independent contractors or that their fee based compensation exceed the minimum wage. Strauss Aff. ¶ 18. Even prior to addressing the defenses in the merits, Class Counsel needed to obtain the cooperation from all Collective Members, the majority of whom demonstrated very little interest in the case.  Strauss Aff. ¶ 15.  Defendants, seeking an advantage, served inordinate amounts of discovery on Collective Members and were demanding depositions of at least 25 Collective Members, and possibly all 105, in addition to the Named Plaintiffs. Furthermore, when taking on this case, Class Counsel faced the risk that the Court would not grant conditional certification under Section 216(b) of the FLSA or class certification under Rule 23, and such a determination would likely be reached only after extensive briefing. Defendants would likely have argued, in their opposition to collective and class certification and anticipated motion to decertify the collective action, that individual questions, including but not limited to differences regarding hours worked and potential supervisory responsibility, would preclude class certification. Although Plaintiffs disagree with these arguments, defendants have prevailed on arguments like these. *See Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a product of employees

working at different facilities, under different managers, and with different customer bases");

*Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification

in misclassification case based on evidence that Class Members' duties varied by location); *Zivali*

*v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion

to decertify a FLSA collective action); *O'Brien v. Ed Donnelly Enters., Inc.*, No. 04 Civ. 00085,

2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) *aff'd*, 575 F.3d 567 (6th Cir. 2009)

(decertifying FLSA collective where plaintiff restaurant employees failed to show that employer

had a common policy or plan that negatively impacted named and opt-in plaintiffs).

**4.     Quality of Representation:** "To determine the 'quality of the

representation,' courts review, among other things, the recovery obtained and the backgrounds of

the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 US Dist. LEXIS 9144 (S.D.N.Y.

Jan. 31, 2007) (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467). Here,

by Class Counsel's estimation, Class Members are owed, at the high end, $1.5 million. in unpaid

minimum wages and overtime wages. Strauss Aff. ¶ 19.   The $275,000 settlement is therefore

approximately 20% of the class's total lost wages *and* liquidated damages. *Id.*   The settlement

represents a substantial recovery for Class Members and Collective Members, particularly in light

of the risk of losing both collective and class certification, having a collective action decertified,

losing on the merits, and losing on appeal.   Moreover, as explained above, class counsel had great

difficulty obtaining to cooperation of Collective Members other than the Named Plaintiffs, many

of whom worked for Defendants for a short period of time from their homes while also working

in other jobs.   Strauss Aff. ¶ 18.   Indeed, the likelihood that most Collective Members would be

able to come forward of evidence of the hours they worked was almost nill – and Defendants were

insisting on such evidence by arguing against class sampling.   *Id.*   Through the settlement, Class

36

and Collective Members who had no ability or desire to prove their hours worked or provide other discovery will nevertheless be paid.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

       **5.**    **Fee in Relation to the Settlement:** Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall. "In *re Gilat Satellite Networks, Ltd.*, 2007 US Dist. LEXIS 68964, *54 (E.D.N.Y. Sep. 18, 2007) ("[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement.  Thus, where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks*, 2007 US Dist. LEXIS 68964, at *50-52, n 41 (finding a 30 percent fee would not constitute a windfall" [g]iven the modest size of the [$20 million] settlement").  The size of the $275,000 settlement therefore weighs in favor of granting the requested fee award of 33.33% of the Settlement Fund or the actual lodestar of $128,385.43.

       **6.**    **Public Policy Considerations:** Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.  The FLSA and the State Laws are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (citation omitted). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes.

*Khait v. Whirlpool Corp.*, 2010 US Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk").

Here, Class Counsel successfully negotiated a settlement agreement that obtains monetary compensation for Class Members and members of the collective.  No class or Collective Member had individually started an action because of the low dollar value of their claim.  Strauss Aff. ¶ 22. As set forth above, this was a difficult case dealing with novel issues of the misclassification of medical record retrievers who work from home.

C.     *Class Counsel Are Entitled to a Reasonable Fee of 33 ⅓ Percent of the Settlement Fund:* In the event the Court determines that the percentage-of the-settlement method is a more appropriate means to determine Class Counsel's fee application, the Court should award Class Counsel a fee of $91,657.50, which is 33.33% of the Settlement Fund. The Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (1/3) of the Gross Settlement Amount." Strauss Aff. Ex. A (Settlement Agreement) ¶ 3(b).  In addition, the Court-approved Notice that was sent to all Class Members and Collective Members stated the following: "Class Counsel will ask the Court to approve payment of up to one-third of the Settlement Fund for attorneys' fees.  These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Strauss Aff. Ex. E (Class Notice) §§ 19. No Class Member has objected to the requested attorneys' fees or expense reimbursement. Strauss Aff. ¶ 22; Kratz Aff. ¶ 11. The lack of objections to Class Counsel's fee and cost reimbursement request is an indication of the reasonableness of the requested award and weighs in favor of approving it. *Yuzary*

38

2013 US Dist. LEXIS 144327; *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 US Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 US Dist. LEXIS 105775 *13 (S.D.N.Y. Sep. 16, 2011). The request for 33.33% of the Settlement Fund plus expenses is reasonable and within the range approved by courts in similar cases. *Yuzary*, 2013 US Dist. LEXIS 144327, at *11 (awarding attorneys' fees of 31.7% of the Settlement Fund); *Sewell*, 2012 US Dist. LEXIS 53556, at *12 (awarding attorneys' fees of one-third of the Settlement Fund); *Davis*, 827 F. Supp. 2d at 183 (awarding attorneys' fees of 33 1/3% of the Settlement Fund).

C.   *Class Counsel Are Entitled to Payment of Expenses Under the Settlement Agreement.* Class Counsel request payment of $1,936.52 in expenses to be paid from the Fund. [5]"Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citation and internal quotation marks omitted). Accordingly, Class Counsel seeks reimbursement of the following invoices: (1) $623.94 for the production of documents and electronically stored information by US Legal Support, invoice N3406082 (Strauss Aff. Exh. G); (2) $1,135.96 for Evolve Discovery for access to a Relativity database, invoice 2000003095 (Strauss Aff. Exh. H); (3) $176.62 for Metro Attorney Services, Inc. for service of process on Defendants, invoice 6627 (Strauss Aff. Exh. I).

---

[5] The request does not include copy expenses, postage and long distant telephone expenses, which were incurred but have not been billed to the Settlement Fund.

Here, Class Counsel's expenses of $1,936.52 were incidental and necessary to the representation of the Class. Strauss Aff. ¶ 35. *Rosario v. Valentine Ave. Disc. Store, Co.*, 2016 US Dist. LEXIS 28266, at *27 [E.D.N.Y. Mar. 3, 2016) (approving $32,411.73 in costs). The out of pocket costs for document production, document review databases, and service of process, should be paid for from the Settlement Fund.

## VII.    The Court Should Approve Service Awards for the Named Plaintiffs in the Amounts Set Forth in The Settlement Agreement and the Class Notice.

Named Plaintiffs Sheri Brooking-Van Lone, Amy Cross, Dominica Zeller, Amy Stowe, Jane Pietkivitch, Shelia Murphy, Tammy Meunier, Shari Merrill, and Elena Carroll ("Named Plaintiffs").[6] have made important contributions to the prosecution and fair resolution of this action on behalf of Class Members. Strauss Aff. ¶ 37. They assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties and those of other Class Members, the wages they were paid, the hours that they worked, and other information relevant to their claims. *Id.* Throughout the litigation, the Named Plaintiffs regularly communicated with Class Counsel and assisted with the preparation and review of the Complaint. *Id.* Each named plaintiff was also subject to extensive discovery, including thirty-eight document demands and was required to respond to twenty-three interrogatories in May 2014. *Id.* The Named Plaintiffs undertook extensive searches for documents and responded to each interrogatory, which included questions as such as

> Identify all persons with any knowledge or information concerning any efforts by you to provide Services to any person other than Defendants, including the names of any persons with whom you attempted to or did provide Services, and any recruiters, search

---

[6] Not included in the Named Plaintiffs are Ruby Owens and Janice Bartoldus whose assistance was minimal and are, therefore, not eligible for a service award.

firms or employment agencies with whom you communicated, and identify the date and nature of each such communication.

Needless to say, these were onerous demands which required time and dedication to respond to. The Named Plaintiffs were also involved in the settlement negotiations, including discussing and approving appropriate terms. *Id.*

The Court-approved Notices that were sent to Class Members and Collective Members stated the service awards that the Named Plaintiffs request:  $2,000 to Sheri Brooking-Van Lone, $2,000 to Amy Cross, $15,000 to Dominica Zeller, $10,000 to Amy Stowe, $6,000 to Jane Pietkivitch, $5,000 to Shelia Murphy, $10,000 to Tammy Meunier, $10,000 to Shari Merrill, $6,000 to Elena Carroll. Strauss Aff. Exh. A (Settlement Agreement § 3(c)); Exh B (Class Notice, § 19).  No Class Member has objected to the requested service awards. Strauss Aff. ¶ 38.

A.     **The Requested Service Awards Are Reasonable and Should Be Approved:** The service awards that the Named Plaintiffs request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit. Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *Velez v. Majik Cleaning Serv.*, 2007 US Dist. LEXIS 46223, *7 (S.D.N.Y. June 22, 2007) (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (internal quotation marks and citation omitted); Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]. *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 US Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010). "Service awards fulfill the

41

important purpose of compensating plaintiffs for the time they spend and the risks they take."
*Yuzary*, 2013 US Dist. LEXIS 144327, at *12.

Courts routinely approve service awards in wage and hour class and collective actions. *See, e.g.*, *Hall v. Prosource Techs., LLC*, 2016 US Dist. LEXIS 53791, at *31 (E.D.N.Y. Apr. 11, 2016) ("service award of $3,500 for each of the Named Plaintiffs is reasonable and within the range of awards granted in this district"); *Rosario v. Valentine Ave. Disc. Store, Co.*, 2016 US Dist. LEXIS 28266, at *21 (E.D.N.Y. Mar. 3, 2016) ("The Court should grant the motion for approval of a class representative service award in the amount of $10,000 to Julian Rosario"); *Hart v. RCI Hospitality Holdings*, 2015 US Dist. LEXIS 126934, at *49-50 (S.D.N.Y. Sep. 22, 2015) ($15,000 service payments for the two named plaintiffs and class representatives, Sabrina Hart and Reka Furedi, and $2,000 service payments for each of the 25 opt-in discovery participants); *Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*, 2015 US Dist. LEXIS 125869, at *35 (E.D.N.Y. Sep. 21, 2015) ($5,000 each for three named plaintiffs found to be reasonable); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *9-10 (S.D.N.Y. Jan. 29, 2014) (awarding service awards of $25,000 to each named plaintiff); *Viafara v. MCIZ Corp.*, 2014 US Dist. LEXIS 60695, at *44-45 (S.D.N.Y. Apr. 30, 2014) ("The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement. These amounts shall be paid from the Settlement Fund"); *Capsolas v. Pasta Resources, Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y Oct. 5, 2012) (approving award of $20,000 for class representative); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *14-15 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000); *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 11, 2011) (approving $45,000 and $5,000 service awards to named plaintiffs); *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of

$15,000 each for three class representatives); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *1–2 (S.D.N.Y. Dec. 15, 2010) (granting $40,000 and $15,000 service awards in wage and hour action, where named plaintiffs were actively involved in prosecuting the case over its five-year pendency); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *Duchene v. Michael Cetta, Inc.*,  2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving service payments of $25,000 and $10,000 in wage and hour action).

In examining the reasonableness of a requested service award, courts consider: (1) "the personal risk [] incurred by the [named] plaintiff[s]"; (2) "the time and effort expended by [the named] plaintiff[s] in assisting the prosecution of the litigation;" and (3)" the ultimate recovery" in vindicating statutory rights. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (citations omitted); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

1.	*The Named Plaintiffs Assumed Significant Risk:* In assessing the reasonableness of service awards, courts consider the risks that the class representatives assumed in serving the interests of the class. *See Frank*, 228 F.R.D. at 187; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C*, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("awards for class representatives serve the dual function of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."). In the employment context, where workers are often blacklisted if they are considered "trouble makers," plaintiffs who sue their employers are particularly vulnerable to retaliation. *See Frank*, 228 F.R.D. at 187-88; *see also Velez*, 2007 WL 7232783, at *7 (observing that the plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"). Even where there is not a record of actual retaliation, plaintiffs merit recognition for assuming the risk of retaliation for the sake of absent

Class Members. *See Sewell*, 2012 WL 1320124, at *14 ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent Class Members."); *Frank*, 228 F.R.D. at 187-88("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

> 2. *The Named Plaintiffs Expended Significant Time and Effort:* The Court should grant the requested service awards based on the significant work that the Named Plaintiffs undertook on behalf of the class. Courts recognize the important factual knowledge that plaintiffs bring to employment class actions, including information about employer policies and practices that affect wages. *See Frank*, 228 F.R.D. at 187 (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims [,]" including by responding to counsel's questions and reviewing documents); *Parker*, 2010 WL 532960, at *1 (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents, formulating the theory of the case, identifying and locating other Class Members to expand settlement participants, and attending court proceedings). Here, the Named Plaintiffs contributed significant time and effort to the case by, among other things, providing Class Counsel with detailed factual information regarding Defendants' policies and other information relevant to their claims, and regularly making themselves available to communicate with Class Counsel when necessary, including throughout the discovery phase – for which numerous documents and responses to interrogatories

were requested, and the settlement. Strauss Aff. ¶ 37. The Named Plaintiffs also helped gather support for the case by informing other Class Members about the case and their right to participate in it. *Id.* In addition, they were involved in lengthy settlement negotiations, including discussing and approving appropriate terms. *Id.* This time and effort supports the requested service awards. *See Silverstein v. AllianceBernstein, L.P*, 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (granting service award of $25,000 to class representatives in wage and hour class action settlement for the time they spent on the case and the risk they took in litigating it); *Sewell*, 2012 WL 1320124, at *15 (granting service awards of $15,000 and 10,000 to named plaintiffs where they "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel"); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins for the time and effort expended on the case); *Mentor v. Imperial Parking Sys., Inc.*,, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 and $15,000 service awards in wage and hour action where plaintiffs "were actively involved in the prosecution of th[e] case").

> 3.    *The Ultimate Recovery Supports the Requested Service Awards.* The requested service awards amount 23% of the total recovery, which is a reasonable percentage. *See, e.g., Parker*, 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the likelihood that Class Members who submit claims will still receive significant financial awards"); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Frank*, 228 F.R.D. at 187 (approving award of approximately 8.4% of the settlement). This case, as set forth above, was challenging for

45

both the Named Plaintiff and Class Counsel due to the little interest expressed by absent Class Members and other members of the collective who worked for Defendants for a short period of time, from home, while also working for other employers.  Strauss Aff. ¶ 18.   For example, as explained above, in response to Defendants' Second Set of Interrogatories was propounded on every member of the Collective but most failed to respond and plaintiffs were ultimately only able to obtain verified interrogatory responses demands from 53 of the Collective Members. Strauss Aff. ¶ 13.  However, the Named Plaintiffs each provided comprehensive responses, in addition to having responses to Defendants' First Request for the Production of Documents. *Id.*  Accordingly, most of the work on pushing the matter to be filed and resolved fell to the Named Plaintiffs and Class Counsel. The service awards requested here are justified given the ultimate recovery in the litigation.

**VIII.        CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court certify the settlement classes, grant final approval of the class action settlement, grant final approval of the settlement of the FLSA collective claims, approval of attorneys' fees and payment of expenses, approval service awards to named plaintiffs.

Dated: New York, New York
        June 29, 2016

/s/ J. Strauss_____
Jesse Strauss (JS-0212)
STRAUSS LAW PLLC
305 Broadway, 7th Floor
New York, NY 10007
Phone: 212-822-1496
Email: Jesse@strausslawpllc.com